## Miller v. New York Life Insurance Company.

(Decided February 12, 1918.)

Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

1. Insurance—Mutual Insurance—Class of Policies.—Although a "class" of life insurance policies, in its primary or ordinary sense, signifies those policies issued: (a) in the same calendar year; (b) upon lives of persons of the same age; and, (c) on the same plan of insurance, such a "class" is not to be treated as a separate unit in apportioning expenses and earnings, if injustice among those insured upon the same plan would result.

2. Insurance—Mutual Insurance—Accounting.—It is the duty of an insurer on the mutual plan to so keep its accounts with its members that it may, when called upon at the end of the deferred dividend period, render a fair and equitable accounting; and it may adopt any method of keeping its accounts, which includes classification, that is fair and equitable when considered with reference to its contract, its other policyholders, and which will not give undue advantage in the mutual funds to any policyholder.

3. Insurance—Construction of Policy.—Courts must construe an ambiguous insurance contract, or such provision therein, so as to give effect to the intention of the parties as expressed by the contract as a whole, considered in the light of the circumstances inducing and attending its execution.

4. Insurance—Mutual Insurance—Classification—Apportionment of Earnings.—The holder of a deferred dividend policy, providing that surplus or profits derived from lapsed, surrendered and dead policies shall be apportioned among the persisting policies, can

not demand of the insurer a classification according to date of issue and age, for the purpose of distribution of profits, in the absence of express provision therefor in the contract.

5. Insurance—Mutual Insurance—Construction of Policy—Law of Averages.—Any construction of an ambiguous provision in an insurance policy which disregards or unreasonably interferes with the law of averages, the basic principle of all sound insurance, cannot be adopted, when to do so would discriminate in favor of some and against other policyholders insured upon the same plan.

6. Insurance—Mutual Insurance—Method of Apportionment.—In an action by the holder of a deferred dividend policy in a mutual company, for an accounting and apportionment of earnings, the following method of apportionment made by the company, at the end of a class period of accumulation, is approved: (a) Apply to each class, not the mortality experience of that "class" within itself but the average mortality experienced of the company's experience among all its deferred dividend policyholders; (b) charge the policies of the "class" with their proportionate share of the company's expenses; (c) credit the "class" with interest at the average rate earned by the company on all its funds; and (d) apply the average rate of lapses and surrenders prevailing among all holders of policies issued upon the same plan.

7. Insurance—Mutual Insurance—Action for Accounting—Default Judgment.—In an action by a policyholder for an accounting and apportionment of earnings, it appearing that the insurer classified plaintiff's policies as belonging to a class embracing all of its policies issued on the distribution policy plan and rendered an accounting upon such classification, plaintiff is not entitled to default judgment for failure to render an accounting.

ELLERBE W. CARTER, TYLER BARNETT and J. P. HOBSON & SON for appellant.

J. H. McINTOSH and WILLIAM MARSHALL BULLITT for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

In 1889 and 1893, respectively, the New York Life Insurance Company issued two deferred dividend policies for $5,000.00 each to appellant, Miller, on the twenty-year distribution policy plan, with mortuary dividend features. The premiums were paid, as due, upon each policy during the deferred dividend periods, when settlements were had in which, on the first policy appellant was paid in insurance the equivalent of $824.80 as the accumulated dividends due him, and on the second policy he was paid in cash $982.10 as the dividends due him on that policy.

Thereafter, on September 3, 1913, appellant and his wife, who was the beneficiary under the policies, filed this suit in equity against the Insurance Company for an accounting, alleging a larger dividend was due under each policy than was paid, and praying for an accounting and judgment for the excess claimed to be due. Attached to the petition were interrogatories calling for such information as plaintiffs deemed essential to an accounting.

The answer, conceding plaintiff's right to an accounting, but denying that anything further was due on either policy, gave such an elaborate mass of detailed information in reference to every deferred dividend policy, on the same plan as plaintiff's policies, issued by it, from the date of plaintiff's first policy to the date of the preparation of the answer, some 11,000 in number, in addition to an exposition of the principles of life insurance, with figures and methods of calculation of every item of debit and credit involved, or asked for, as not only to stagger but to balk any one other than an experienced actuary. In this great mass of information, furnished by the defendant, were tables showing some of the results of treating such small classes as would be formed by a classification of policies issued in each year, on the plan of plaintiff's policies, to persons of the same age, as an illustration of an argument advanced that such classes, if treated as independent units, would result in great profit to some such classes while, to other like classes, the losses not only would wipe out all dividends, but impair the insurance feature of the policies. In other words, such a classification would, in some cases, destroy entirely the primary object of the policy; that is, life insurance; and, in all cases, make insurance secondary and dependent upon the investment feature of such policies; and that such a classification was, therefore, not only impracticable but destructive of the primary purpose of the contracts, and had not been adopted by the company.

Plaintiffs then filed an amended petition in which they placed their right to recover upon just such a classification, and amended their prayer to conform thereto, asking judgment on the first policy for $339.60 and on the second policy for $548.85, making in all $888.45, claimed to have been fraudulently withheld by the defendant.

The answer to the amended petition denied that the sums claimed, or any sum, had been fraudulently or otherwise withheld or were due plaintiffs.

A reply was filed denying the allegations in the answer to the effect that the amounts paid him were the full amounts due, or that they were determined by an accounting, or upon adopted principles or methods for determination of the amounts equitably due him, or that any accounting had been had, or that the sums paid were received or accepted in full settlement of the accumulated dividends due.

The only testimony introduced, in addition to the answers of defendant to the interrogatories filed with the petition, was that of appellant in his own behalf and two actuaries for defendant. Appellant testified that no accounting had been rendered at the time of the payments to him, or at all, although demanded; that such payments were not in full of the amounts due for accumulated dividends, in support of which several letters to and from the company were introduced; and that larger dividends had been received upon a like policy, covering practically the same period, in another company.

The actuaries testified in approval of the methods employed by defendant, and as applied to the policies involved.

The chancellor rendered judgment, dismissing plaintiffs' petition, and delivered a written opinion, which so· clearly and concisely states the questions involved, as well as our conclusions with reference thereto, that a considerable portion of it is embodied herein, furnishing also, as it conveniently does, a basis for such elaboration as we deem proper, in answer to criticisms thereof by counsel for plaintiffs. After stating the case, the opinion is as follows:

"Whilst there appear to be many bases of classification of life insurance policies, in its primary and ordinary meaning 'a class' of policies signifies those policies issued, (a) in the same calendar year, (b) upon the lives of persons of the same age, and (c) on the same plan of insurance. According to this definition one of the plaintiff's policies belonged to a class of 27 and the other to a class of 76.

The method of apportionment employed by the defendant when a class completes its period of accumulation, which method appears to have been followed in the case of plaintiff's policies, is,

(1) To apply to each class—not the mortality experience of that class within itself, but the average mortal-

ity rate of the company's experience among all its deferred dividend policyholders;

(2.) To charge the policies of the class with their proportionate share of the company's expenses;

(3) To credit the class with interest at the average rate earned by the company on all its funds; and,

(4) To apply the average rate of lapse and surrender prevailing among all policies issued on that plan of insurance.

Whenever a class completes its period of accumulation the defendant company makes a calculation on the theory of its going into liquidation, and apportions to that class such part of the total assets of the company as it would receive if the company were on that date in fact going into liquidation. As to the particular class it is an actual liquidation. By this method it is stated in the proof, all the assets of the company are apportioned, leaving no balance.

Boiled down, the issue in the present controversy is as to whether the defendant, by the terms of the policies and the law applicable to the case, was required to treat each of the classes to which the plaintiff's policies belonged as segregated units of a tontine character at least so far as regards distribution of profits from lapses—number (4) above.

It appears that the profits from the lapses in plaintiff's two classes, if each is taken by itself, are considerably more than the average among all the policies issued on the same plan of insurance, and on behalf of the plaintiff it is contended that the defendant should have divided those profits among the survivors of each of those classes only. For the defendant, on the other hand, it is maintained that the contracts do not so require, and, further, that a method of apportionment such as the plaintiff urges would have been impracticable, because, as claimed, the small number of persons actually composing the two classes in question, or likely to compose any 'class,' precludes the application of the principle of averages to the extent that is necessary in the business of insuring lives.

To be properly dealt with in an opinion, the questions involved might be said to call for an elaborate exposition of the principles of life insurance, an explanation of the various factors involved, and a more or less extensive presentation of intricate calculations. The court, however, cannot undertake that mode of treatment,

but must restrict itself to a very brief statement of its conclusions. These are:

1. That there is nothing in the policies themselves which made it the duty of the defendant to treat the classes to which they belonged as independent units, crediting to the persisting policies of those small classes respectively all the profits derived from the lapsed policies of those classes, but that the description, 'policies on the Distribution Policy Plan,' found in the provision in the policy No. 327256, that 'surplus or profits derived from such policies on the Distribution Policy Plan as shall not be in force at the date of the completion of their respective distribution periods, shall be apportioned among such policies as shall complete their distribution periods,' must be construed to mean *all* policies issued on the Distribution Policy Plan, and not merely policies issued in the same year, at the same age and on the same plan.

(2) That the thing of fundamental and supreme importance in the conduct of the business of life insurance is to pursue such methods as will place all policyholders on a plane of exact equality so far as the certainty of the payment of valid death claims is concerned. All other features and considerations, such as the distribution of profits among the survivors of a particular class of policyholders, must, in every properly managed company, be held in strict subordination to the paramount duty just stated.

3. That the entire business of insuring lives, including the matter of apportioning surplus or profits, depends for its successful and equitable conduct upon the recognition and faithful and scientific application of the principle of averages, and that the principle would have been deprived of a basis adequate for its safe operation had the defendant undertaken to treat its various classes or groups of policyholders as detached units, to the extent urged by counsel for the insured; as illustrated by the fact that whilst under such a plan some classes, like the plaintiff's, would have shown handsome profits to the survivors, others would have been insolvent.

4. That the accounting made by the defendant will have to be approved, and the petition is dismissed. It is so ordered.''

Plaintiff's main contention is that the defendant was required to classify all its policies, placing those issued the same year upon the same plan to persons of the same age, in a single class and treat same as an independent

unit. In support of this contention, the cases of United States Life Insurance Co. v. Spinks, 126 Ky. 405, and Equitable Life Insurance Co. v. Winn, 137 Ky. 641, are cited and relied upon as conclusive. It will, therefore, be necessary for us first to consider these cases.

1. In both it was held that an insurance company is a trustee liable to its policyholders, upon the termination of the trust, to an accounting; and, in the latter case, that, if it failed to render such an accounting when demanded by suit, a judgment as by default would go against it for the amount claimed to be due. In reaching these conclusions, rather extensive discussions of the principles underlying and applicable to insurance as a business are indulged; and, in deducing therefrom the duties and obligations of the company to its policyholders, it is said, in effect, that the obligation for an accounting by the company imposes the duty of classification and bookkeeping so that the accounting may be had when the time therefor arrives; but, in neither case, did the court attempt to define how the classification should be made or the accounts be kept, except that both must be done in such manner that the company could, whenever due the insured, render him an accounting upon fair and equitable terms. In fact, the Spinks case, under a New York statute, it is true, which does not seem to be involved here, carries the trusteeship theory to the extent of practically eliminating the possibility of profit from lapses by requiring the application of every cent due the lapsed policy to the purchase of extended insurance, which, if followed in this case, would defeat plaintiff's claim, because, as finally urged, it is reduced to a claim to the right of participation in the profits from lapses under a classification which the company insists is preferential and unfair.

It is, therefore, apparent that these cases are applicable here, only in so far as they establish the right in plaintiffs to an accounting and for such a classification of their policies and such information as was necessary to a fair and equitable adjustment of their interests, under their policies, in the surplus of the defendant, a mutual company, to the creation of which they had contributed. It is equally apparent that neither of these cases fixes any particular method for a classification of the policies, or an accounting thereunder, because the question was not before the court in either case, except in the most general terms, which amounts to no more than requiring that the

method employed by the company, in keeping its accounts with its members, shall be such as will enable it, when called upon, to render a fair and equitable accounting, which necessarily accords to the company the right to adopt any method which is fair and equitable, when considered in the light of its contract with the plaintiff and its other policyholders, who, the enterprise being the mutual undertaking of all the policyholders, are entitled to the same consideration as the plaintiff; and no methods could be adopted which would give to any policyholder undue advantages in the distribution of mutual funds intrusted to the care and management of the company as trustee for all.

This is the only logical conclusion possible upon a consideration of a mutual life insurance company purely as a trustee for its policyholders and might, if pushed, lead to some grave difficulties upon a consideration of the extent of the power of such a company to make a contract for preferential treatment of any kind of either an individual policyholder or a class. That question, however, is not here, and we make this suggestion only for the purpose of illustrating the absolute necessity, upon an accounting with plaintiff or any policyholder of considering the rights of all policyholders insured, at least, upon the same plan and under similar contracts, and of the consequent duty of defendant to adopt no plan of classification or method of accounting which would impair the rights of others insured upon the same plan of insurance as plaintiff. Certainly, neither of the cases cited can be construed as authority for any classification or method of keeping accounts which would give any policyholder, or any "class," any preference over other policyholders, insured upon the same plan of insurance and under policies similar in terms.

These considerations unquestionably, it seems to us, limit the right and duty of classification for participation in surplus or profits in a mutual company to such policyholders as contribute thereto, and necessarily includes in any such classification all who contribute thereto; otherwise, the classification will be both unfair and inequitable; but when any classification for distribution of profits, adopted by the company, thus includes all who are entitled to participate and excludes all who are not entitled to share in any item of profit or surplus, and its methods of distribution and bookkeeping among members thus classified are fair and equitable, no policyholder has a right to

object to the classification or methods of keeping accounts which the company has adopted, even though some other method, which it might have adopted, would attain the same results, because the duty of keeping accounts, which, of course, includes classification, necessarily devolved upon the company, for, as a trustee, this is of necessity one of the most important duties intrusted to it.

Plaintiff contends that, because defendant did not classify his policies with others issued in the same year, at the same age and upon the same plan and treat such "classes" or groups as independent units, it made no classification whatever, and, therefore, under the Winn case, he was entitled to a default judgment; but this contention results from a refusal to consider any classification other than of policies issued the same year, at the same age, and upon the same plan, as complying with the classification suggested in the Spinks and Winn cases. But, as we have attempted to show, these cases did not lay down any rule for classification except it must be fair and equitable, and the classification suggested by plaintiff, but not adopted by defendant, is proved most conclusively to be neither fair nor equitable, because it would have placed one of plaintiff's policies in a "class" of but twenty-seven members and the other in a "class" of seventy-six members, which would have resulted in large profits to members of these two small classes because of accidental fortunate experience in mortality, but would have resulted to members of other such small classes, insured upon exactly the same plan and under exactly similar policies, except as to age and date of issue, not only in loss of any profit, but in the loss of insurance as well, because, by chance, the mortality experience of such other small sub-divisions of the one large class insured upon the same plan and under similar contracts, was unfortunate. Such a classification as plaintiff demanded was, therefore, clearly discredited, because it rendered ineffective upon equitable terms of participation in profits not only the tontine feature, but the whole insurance policy of some members of the whole class, who held exactly similar policies as did plaintiff, except as to dates of issue and age of the insured.

Plaintiff concedes that the classification demanded by him cannot be applied to mortality or expenses, or to profits other than from lapsed and forfeited policies, but contends such a classification should have been made

as to profits derived from these items of lapses and for-
feitures.

So that, as far as classification is concerned, the real
question raised is, did plaintiff have the right to be placed
in a class limited not only as to the plan of insurance
but also as to the date of issue and age of the insured,
for the purpose of ascertaining profits due him from
lapses and forfeitures only, which classification is con-
cededly impracticable as well as inequitable, with refer-
ence to every other item covered by an accounting. Cer-
tainly, this question is not determined by either the Spinks
or the Winn case, as no such proposition was even sug-
gested, and, therefore, those cases are not only not ap-
plicable and do not cover this case like a blanket, as
stated by counsel for plaintiffs, but they do not even touch
it, except to entitle plaintiff to a fair and equitable ac-
counting, which is not contested.

However, policies of the same kind, upon lives of
persons of the same age, issued the same year, can be,
and are by defendant, placed in a class for convenience
in making the calculations of what is due each, because
maturing the same year and covering the experience of
the company for the same time, but, as conceded by
plaintiff, such a class cannot be treated as a separate unit,
in determining its share of loss from deaths, but the
average mortality rate of the company's experience
among all of its deferred dividend policyholders must be
applied; nor for determining its share of expenses and
profits other than from lapses and forfeitures, but the
average rate of all policies issued by the company must
be applied.

If policies of the same plan are not to be classified
as to date of issue and age of the insured, and such
classes treated as separate units, with respect to mortali-
ty, expenses and earnings, other than from lapses and
forfeitures, which, as is most conclusively proved by this
record, cannot be done as to effectuate the evident and
expressed primary purpose of the policy, why should
they be so classified and treated as to these lapses and
forfeitures? Plaintiff's answer to this is that his policies
so provide, which, if true, is a good and sufficient answer,
because, while it is the duty of courts to construe an am-
biguous contract, or provision therein, so as to give
effect to the intention of the parties, as expressed by the
contract considered in the light of the circumstances in-
ducing and attending its execution, no court has the right

or power, under the guise of construction, to make for the parties a contract they did not make, which it is inisted the chancellor did in this case.

The exact provisions of the policies sued on, under which this claim is made, are not pointed out by counsel for plaintiff, but we presume that the following clauses, copied from one of the policies, because they are all we can find relating even remotely to the subject, are those referred to and relied upon:

"This policy is issued on the distribution policy plan, the particulars of which are as follows:

"That the distribution period for this policy shall be completed on the 29th day of July, 1909.

"That no dividend of surplus shall be allowed or paid upon this policy unless the insured shall survive until completion of its distribution period and unless this policy shall then be in force.

"That surplus or profits derived from such policies on the distribution policy plan shall not be in force at the date of the completion of their respective distribution periods shall be apportioned among such policies as shall complete their distribution periods."

How these clauses can be construed as an agreement to limit their application to such policies only as were issued in the same year to persons of the same age, rather than to all policies of the same plan, we are unable to see, and certainly there is nothing in any clause of either policy which expressly so provides. On the other hand, the provision quoted above that, "surplus or profits derived from *such policies on the distribution policy plan* as shall not be in force at the completion of their *respective distribution periods* shall be apportioned among such policies as *shall complete their distribution period,*" in the words we have italicized, indicates a participation in profits derived from all "such polices *on the distribution plan* as shall not be in force at the completion of their *respective distribution periods,*" by all the persisting policies, first, because to include a part and exclude another part of "such policies on the distribution policy plan," a single plan, would be to make a distinction between policies of the same kind merely because of an accidental difference in the date of issue, and in the age of the insured, not a distinguishing feature although necessitating a different premium because of the necessity of equalizing the differences in age by compen-

sation in order that all could qualify for a uniform classification upon fair terms under the .same plan; and, second, because if, as contended by plaintiff, only those could participate in a distribution of profits from this source whose policies covered the same period, why the expression, "at the completion of their *respective* distribution *periods?*" This plainly indicates the inclusion of policies having different distribution periods.

We, therefore, conclude that neither by his policy nor under the Spinks or Winn case was the plaintiff authorized to demand a classification, according to date of issue and age, for the distriutibon of any profits or.for any other purpose; and that such classification made by the defendant for convenience, as explained, in making calculations for policies maturing at the same time, was not an adoption by it of such classification for any other purpose.

The profits or surplus derived from lapsed, surrendered, and dead policies were, by defendant, carried to the surplus derived from other sources on all deferred dividend policies, such as plaintiff's, regardless of date of issue and age of insured; and this seems to us both a reasonable construction of these clauses and the proper classification of the policies under the equitable principles upon which the Spinks and Winn cases are rested; in fact, the classification made necessary on account of the impracticability of any other, with respect to the other items involved in determining the amount of surplus due these policies, unless a different plan of classification is to be adopted with respect to the one item of profit from lapses and forfeitures, which is not provided for by the terms of the policy, so far as we are able to discover, and which is not demanded by either the Spinks or the Winn case, but rather forbidden by both because inequitable and unfair. The plan of insurance selected, rather than the date of issue and age of the insured, in the absence of express provisions of the policy or the law, in our judgment, indicates and necessitates the proper classification of a policy for the distribution of all surplus, for, otherwise the benefits of the law of averages are lost or seriously curtailed. Counsel for plaintiff seem to resent any reference to or consideration of the law of averages in the decision of this case, but insurance is the developed scientific effort to eliminate or rather reduce to the minimum the consequences of chance

by the substitution therefor of the table of law of averages and the investment feature of tontine insurance policies is but incidental and dependent upon, and modernly regarded as inimical to, insurance. Any mere construction of an insurance contract, therefore, that would disregard or unreasonably interfere with the law of averages, the basic principle of all insurance, as would unquestionably result from a classification into such small classes as is desired by plaintiff, ought not to be adopted and cannot be adopted, when to do so would discriminate among policyholders insured upon the same plan and under similar policies.

Plaintiff's contention that the defendant did not furnish the information most needed and desired grows out of the fact that defendant did not give the particular accounting asked for, based upon the classification demanded by plaintiff but not adopted by defendant, although information was furnished from which the results of such a classification can be obtained. As we have decided that such a classification was not authorized, it necessarily results plaintiffs were not entitled to an accounting upon such a classification. And the fact that defendant did not classify its policy according to the particular method conceived by plaintiff to be the proper one, is not proof the company made no classification and that a default judgment was, therefore, authorized under the Winn case, as insisted by counsel for plaintiffs, because the proof shows that defendant did classify plaintiff's policies as belonging to the class embracing all of its policies issued on the distribution policy plan, which, as we have attempted to show, was intended by the contract; and the accounting upon that classification rendered by the defendant shows, we think, that plaintiff, as a persisting member of the class, received his proportionate share of the profits from lapses and forfeitures of all such members of the class, that is, all of those insured on the same plan that did not persist until the end of "their respective distribution periods."

That the profits from the deferred dividend feature of the policies are disappointing and not larger is, in part at least, due to the fact that lapses and forfeiture are not favored, and, in deference to laws enacted and public opinion, have been nearly eliminated from insurance contracts, as by the very terms of plaintiff's policies, providing automatically for extended insurance,

surrender values, and the like, in the event of failure to pay the premiums.

It is, therefore, apparent the loss of profits, of which plaintiff complains and which may have formerly accrued to accidentally fortunate holders of this particular kind of policies, but which no longer accrue, results largely from a sound public policy, which is embodied in the non-forfeiture provisions of plaintiff's policies, that would carefully guard against the misfortune and even care-lessness of all such policyholders, the primary insurance feature of such contracts, the basic principle of which is recognized to be the law of averages among a number large enough to establish such a law. Hence we repeat, no mere construction, not demanded by the ex-press terms of the contract, ought to be indulged to force a classification into groups so small as to ignore the law of averages, for to do so, while it would afford large profits to a fortunate class, such profits would be at the expense of less fortunate classes, although the surviving members of all such subordinate classes had been equally faithful in completing their contracts, is-sued upon precisely the same plan but at different dates and ages. In other words, an equitable and fair classi-fication must include in one class all policies issued upon the same plan so that participation in profits may be uni-form to all the members of that single branch of the mutual enterprise; and a further classification or sub-division among such holders of uniform policies, depend-ing only upon the accidents of age and date of issue, ought not to be made and must not be made, when such a subdivision is into such small units as will necessarily result in inequitable inequalities among members hold-ing the same kind of policies, which must, and will, al-ways and inexorably, follow the elimination of the law of averages among a large number of persons, for such averages are the very foundation and only hope for stability and uniformity in any kind of insurance; and anything less is but a reversion to chance, the very thing insurance was invented to obviate.

The whole contention of plaintiff rests finally upon the conception that his policies and the right to an ac-counting announced in the Spinks and Winn cases, de-mand a classification based upon the date of issue and the age of the insured, and that defendant, having failed to adopt that classification and render account in accord-

ance therewith, failed to either classify or account; but such a construction of either the policies or those cases, as we read them, is not warranted, and the classification adopted and the accounting rendered thereon by defendant is, we think, a reasonable and equitable compliance with the contracts, while the classification sought by plaintiff would have been extremely unfair to other policy holders insured upon the very same plan.

Hence, the judgment must be and it is affirmed.