## Caperton v. Clarke, et al.

(Decided May 13, 1924.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Contracts—Construed to Give Effect to Intention of Parties as Expressed in Light of Circumstances.—An ambiguous contract must be construed so as to give effect to intention of parties as expressed by contract in light of circumstances inducing and attending its execution.

2. Frauds, Statute of—Printed Memorandum Considered with Printed Advertisement of Sale Held to Sufficiently Describe Land.— Printed memorandum, headed "Camp Zachary Taylor Sale Record," followed by words, "Lots sold: twelve (12)," held to sufficiently describe land to satisfy Statute of Frauds (Ky. Stats., section 470), when considered with printed advertisements of sale and blueprints distributed at sale.

3. Reformation of Instruments—Insufficiency of Description of Lot Held Mutual Mistake.—If memorandum of sale of land did not set forth contract that parties had made, in that it did not sufficiently describe the land to satisfy the Statute of Frauds (Ky. Stats., section 470), and they signed it in belief that it did, it was their "mutual" mistake, and instrument could be reformed.

4. Auctions and Auctioneers—No Rescission of Sale for Fraud in Absence of Proof of Reliance on Representation or Damage.—In absence of proof to establish reliance upon false representations in advertisement, or that bid was more on account of advertisement than it would have been, or that there was damage due to alleged

fraud, purchaser of lots at auction sale is not entitled to rescission.

WILLIAM FURLONG for appellant.

BASKIN & VAUGHAN, L. R. CURTIS and W. V. GREGORY for appellees.

OPINION OF THE COURT BY SANDIDGE, COMMISSIONER—
Affirming.

After the close of the World War, the United States of America, by the Secretary of War, acting by agents of the Quartermaster's Department and under authority of the provisions of an act of Congress, approved February 28, 1920, contracted with D. C. Clarke, trading as the Louisville Real Estate & Development Company, for the sale at public auction of Camp Zachary Taylor, in Jefferson county, Kentucky. To facilitate the conveyance of the property to the purchasers, the United States deeded the lands of the camp to the National Bank of Kentucky in trust for that purpose. After due and elaborate advertisement, at a public auction sale, on the 4th day of April, 1921, the Rifle Range Unit of Camp Zachary Taylor was sold. Prior to its sale it had been subdivided into twenty-six (26) lots, numbered 1 to 26, inclusive; blue prints had been made and these were distributed to the crowd in large numbers the day of the sale. The first four lots offered were those numbered 12, 11, 13 and 14, as shown by the blue prints. Appellant, John H. Caperton, was the highest bidder for each of them and they were each knocked down and sold to him, No. 11 at $2,-692.25. No. 12 at $2,865.00, No. 13 at $4,217.50 and No. 14 at $8,947.65. Immediately after each sale a memorandum thereof was signed by the parties. The four of them differ only in the description of the lot and the amount of the purchase price, and consequently for convenience we will consider only one of them, the first, which reads:

"CAMP ZACHARY TAYLOR SALE RECORD.

"Number 1.                      Date, April 4, 1921.

"Lots Sold: twelve (12).

"Exceptions: All lots sold shall be subject to an easement in favor of every other lot for the purpose of connections at the nearest or most convenient point with water, gas and sewer mains and electric current.

"Consideration $2,865.00.

"Terms: $1,432.50 cash; balance 1 and 2 years. Deferred payments to be secured by first lien, and bear interest at six per cent per annum.

"Signature of Auctioneer, D. C. CLARKE.
Signature of Purchaser, JOHN G. CAPERTON.
Tel. No. 1013. Address

"The National Bank of Kentucky is hereby directed to execute and deliver a deed in accordance with the foregoing purchase contract.

"This contract is not transferable.

"JOHN M. WEEKS, Secretary of War,
"By C. F. von dem Bussche,
"Q. M. C., U. S. A."

Following this appellant, John H. Caperton, as plaintiff below, filed his petition in equity, Number 123119, in the first division of the chancery branch of the Jefferson circuit court, for a rescission of the four contracts above upon the ground that they had been procured by fraud.

About the same time appellee, D. C. Clarke, trading and doing business as the Louisville Real Estate Development Company, filed his petition in equity in the second division of the chancery branch of the Jefferson circuit court against John H. Caperton, by which he set forth the four contracts above and sought to have Caperton specifically perform them. The two actions were consolidated and the United States of America and the National Bank of Kentucky were made parties with Clarke. By appropriate pleadings the issues were made, and upon the trial of the case by the chancellor under them, he was required to determine: (1) Whether the four contracts evidenced by the memoranda signed by the parties were sufficient of themselves to be and should be specifically enforced or should be reformed and specifically enforced against appellant, or whether they were in violation of the Statute of Frauds and void; (2) whether the contracts had been procured by fraud. From the evidence in the record the court below adjudged a reformation of the contracts and that they be specifically performed, holding that they were not in violation of the statute of frauds and that they had not been procured by fraud. This is an appeal from that judgment and the issues decided by the court below are in controversy here.

Section 470, of the Kentucky Statutes, commonly called "Statute of Frauds," provides that:

> "No action shall be brought to charge any person upon any contract for the sale of real estate or any lease thereof for longer than one year unless the promise, contract, agreement or some memorandum or note thereof, be in writing, and signed by the party to be charged therewith or his authorized agent."

It is contended by appellant that the memoranda of the sales of the lots in question are violative of the statute above and therefore are void. His contention is that the description of the property sold is "manifestly without meaning of any sort—which is to say without form;" that therefore it can not be reformed. Can his contention be sustained when we examine the memorandum in question? The first line reads: "Camp Zachary Taylor Sale Record." That definitely and conclusively fixes the situs of the property. The words, "Lots Sold," read in connection with the first line, and without straining their ordinary meaning, give us to understand that it was lots carved from the lands of Camp Zachary Taylor that were being sold. He will bear in mind that the memoranda of these sales were made on printed forms. Then to designate what particular lot or lots sold were intended, in the memorandum copied above, opposite the printed words of the form, "Lots Sold," there were filled in words and figures, viz., "twelve (12)," so that it read "Lots Sold: twelve (12)." Appellant contends that we must construe that to mean that there were twelve lots sold. May we not with equal propriety construe it to mean that it was number 12 or lot number 12 that the parties intended?

In McBrayer v. Cohen, 92 Ky. 480, 13 R. 667, 18 S. H. 123, the sufficiency of a memorandum of sale and purchase was in issue. It read: "Three hundred and sixty-five acres at $20.00 per acre, to Capt. McBrayer. I certify the above is correct. Oct. 10, 1888. T. D. English." In discussing the question, this court said:

> "But it is argued by counsel the contract is not enforceable for the following reasons: First, that the land is not sufficiently described in order to identify it. Without stopping to consider whether the description contained in the memorandum would

be alone such as to justify enforcement of the contract, there can be no doubt of the identity of the land having been rendered certain by reference to the printed advertisement of the sale previously made, which, as held in Gill v. Hewell, may be considered in connection with, and in aid of, the auctioneer's memorandum in identifying the land sold.''

Manifestly, the reason for the court so holding is based upon the general rule for contract construction that an ambiguous contract must be construed so as to give effect to the intention of the parties as expressed by the contract in the light of the circumstances inducing and attending its execution. Applying the rule in the McBrayer case, *supra,* to the case at bar, the printed advertisements of the sale in question showed it to be the Rifle Range Unit of Camp Zachary Taylor in Jefferson county, Kentucky, that was being sold. The blue print of that unit of the camp, shown to have been in the hands of Caperton when the sale was made, showed that the sale was being made by lots numbered 1 to 26, inclusive. Taking these things into account, in connection with the description given in the memorandum of sale, we are left in no doubt that the parties intended by the words used to describe the land sold that it was lot No. 12 of the Rifle Range Unit of Camp Zachary Taylor.

Waiving this finding, however, appellees sought by appropriate pleading and because of the mistake of the parties to reform the contracts. Appellant insists that they can not be reformed because the mistake was not *mutual.* He cites and relies upon numerous authorities to sustain his contention. The ground is cut from under him, however, by the facts of the case which warrant the conclusion that the mistake was *mutual.* We can not assume that the parties were engaged in mere child's play when on this occasion lot No. 12 offered for sale was bid in by and knocked down to appellant at $2,865.00, and when the parties then undertook to reduce to writing the contract they had made. They signed a paper which they both thought was a sufficient memorandum of the contract they had made to be binding. The mistake was made when the parties, vendor and vendee, signed the paper which they both thought evidenced the contract that they had made which as a matter of fact did not do so in that the description of the land was not sufficient.

If the writing did not set forth the contract that the parties had made and they signed it in the belief that it did, it was their *mutual mistake*. The contract, if defective in any particular, was so only to the extent that the description of the land sold was not fully given.

The case of McMee v. Henry, 163 Ky. 729, 174 S. W. 746, fully sustains the chancellor's judgment reforming the contract of sale. In that case the writing evidencing the contract contained no description at all of the property sold. The chancellor adjudged the reformation and enforcement of the contract sought, and this court upheld the same. See also Thomas v. Conrad, 114 Ky. 841, 24 R. 1630, 71 S. W. 903, 74 S. W. 1084; Scales v. Ashbrook, 1 Metcalfe 358, 184 S. W. 866; Kentucky Citizens' Bldg. & Loan Assn. v. Lawrence, 106 Ky. 92, 20 R. 1700, 49 S. W. 1059; Noel v. Gill, 84 Ky. 241, 8 R. 229, 1 S. W. 428; Kendall v. Crawford, 25 Ky. L. R. 1224, 77 S. W. 364, and Griffith v. York, 152 Ky. 14, 217 S. W. 369.

In the instant case the chancellor adjudged a reformation of the memorandum of sale so as to leave no doubt that it was lot No. 12 of the Rifle Range Unit of Camp Zachary Taylor that appellant purchased. The pleadings authorized and the proof sustained such reformation. We concur with the chancellor in this finding.

The appellant based his right to have the contracts rescinded for fraud upon the fact that it was advertised before the sale was had that the sale would be absolute, without reservation, by-bid or up-set price; whereas, by the contract between the United States of America and Clark it was expressly provided that the United States reserved the right to reject any and all bids unless the property should be sold for as much as the appraised valuation of the property, and he made the usual allegations that he relied upon the advertisement and believed when he bid that there was no reservation or up-set price and that the sale was as advertised an absolute sale, without reservation, up-set price or by-bid.

The chancellor held from the proof taken on this question that the clause in the contract mentioned was superseded by a subsequent clause which restricted the first clause to a right to call off the sale only in the event it should develop that there was a fraudulent combination of bidders. We concur in the opinion reached by the

chancellor on this question. In addition to that, in Hicks v. Wallace, 190 Ky. 287, 227 S. W. 293, it is said:

> "The general rule is that to constitute actionable fraud it must appear:
>
> "(1)   That the defendant made a material representation;
>
> "(2)   That it was false;
>
> "(3)   That when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion;
>
> "(4)   That he made it with the intention that it should be acted upon by plaintiff;
>
> "(5)   That plaintiff acted in reliance upon it; and
>
> (6)   That he thereby suffered injury. Each of the facts must be proved with reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery. A maxim announced in an early English case and ever since recognized as correct is that fraud without damage or damage without fraud is not actionable, but that where both concur an action of deceit will lie."

The appellant did not testify in this case. How can it be said then that he acted in reliance upon the advertisement which he claims was false and fraudulent or that he suffered injury from the fraud in the absence of his having testified upon the subject? In his pleadings on the subject, he alleged that because of the fraudulent advertisement he gave more for these lots than he would have given if he had known that the United States reserved the right to reject his bid, and that he relied upon the advertisement that the sales would be absolute and without up-set price in bidding what he did for the lots in question. However, he did not sustain either of these allegations by proof. In the absence of any proof to establish that he relied upon the advertisement in making his bid or that he bid more for the lots on account of the advertisements than he would have bid if he had known that the government reserved the right to reject the bids, or that he has been damaged in any way by the alleged fraud, how can we say that his right to have the contracts rescinded because of the fraud has been sustained by proof? If we should concede that the advertisements

were fraudulent, how can it be said in the absence of proof by appellant that he relied upon the advertisements or was influenced thereby to bid more than he would have bid if he had known the truth that he was thereby injured? If fraud at all, it is clearly a case of fraud without damage.

The judgment of the chancellor is affirmed.