## Bank of Blaine v. Hanshaw.

(Decided Oct. 23, 1934.)

826

WOODS, STEWART & NICKELL for appellant.

YAGER & WOODS and J. B. ADAMSON for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

Ebert Hanshaw was indebted to the Consolidated Grocery Company evidenced by note which was renewed and payments made on it until January 1, 1931, when there was a balance of $3,800. To secure the payment of the original note, he had executed and delivered a mortgage to the grocery company on the fixtures in a store and a second mortgage on a residence occupied by him in the city of Ashland; the first mortgage on the residence was held by the Ashland Loan & Building Association to secure the payment of $3,225. His note to the grocery company was assigned by it to the Bank of Blaine as collateral to secure an indebtedness of the grocery company. It became due January 1, 1931. A few days before its maturity, the grocery company filed a voluntary petition in bankruptcy. The bank, not satis-

fied with the sufficiency of the security, with the consent of the grocery company, took steps to have Ebert's note better secured. It declined to consent to a renewal of the note, unless it was better secured. To accomplish this, the president and cashier of the bank had a meeting at Ashland, Ky., with Ebert Hanshaw and representatives of the grocery company. At this meeting it was suggested that Ebert Hanshaw induce his father, J. J. Hanshaw, who was not present at the time, to sign a renewal note. Later, J. J. Hanshaw was approached with the proposition that he sign with Ebert the renewal note; he refused to sign it. It was then suggested to J. J. Hanshaw that he enter into a contract to keep up the payments on the note, secured by the first mortgage of the loan and building association on the residence of Ebert Hanshaw, on which the bank held the second mortgage. J. J. Hanshaw, the representatives of the grocery company and the officials of the bank, agreed on the terms and provisions of a ''contract of indemnity'' which was later signed by J. J. Hanshaw and delivered to the bank. It reads:

"Whereas, Ebert Harrison Hanshaw of Ashland, Boyd County, Kentucky, became indebted to the Consolidated Grocery Company, Inc., of Ashland, Boyd County, Kentucky, on the 20th day of May, 1930, in the amount of $4,153.58, said indebtedness being evidenced by a four months note, and secured by a mortgage on fixtures being used in the store operated by the said Ebert Harrison Hanshaw, and

"Whereas, on the 31st day of May, 1930, the Bank of Blaine, Blaine, Kentucky, became the holder of said note as collateral for a loan of the same amount made to the Consolidated Grocery Company, Inc., and

"Whereas, at the maturity of said notes at the Bank of Blaine, the said Ebert Harrison Hanshaw made a payment on the principal and interest, and reduced the principal to $3,800.00 and gave as additional security on the note a second mortgage on a certain piece of real estate, a house and lot on the southwest corner of the intersection of Winchester Avenue and 30th Street, and whereas the said $3,800.00 again became due on January 1st, 1931, and the said Consolidated Grocery Company, Inc., was

on the 2nd day of January, 1931, adjudicated a bankrupt, and

"Whereas, it is the desire of the Bank of Blaine, and Ebert Harrison Hanshaw to keep their affairs connected with these notes out of the bankruptcy court proceedings, and, whereas, the Ashland Loan and Building Association has a first mortgage indebtedness against the above mentioned real estate in the approximate amount of $3,142.40, which amount is being repaid the said Loan Company at the rate of $40.00 each month and which mortgage endangers and lessens the value of the second mortgage to The Bank of Blaine as security, and

"Whereas, J. J. Hanshaw, because of his love and affection for his son, Ebert Harrison Hanshaw, desires to secure for him an extension of time on this note, and desires to strengthen the security of the Bank of Blaine, and offset their release of the Consolidated Grocery Company, as a party to the indebtedness. Now, therefore, the said J. J. Hanshaw, for and in consideration of the sum of $1.00 and for his love and affection for his son, Ebert Harrison Hanshaw, and other good and valuable consideration does hereby guarantee the payment of the first mortgage indebtedness in favor of the Ashland Loan and Building Association on the plan and basis by which it is now being paid thus giving the second mortgage held by the Bank of Blaine the same force and effect of a first mortgage, and agrees to indemnify the said Bank of Blaine against any loss whatsoever, which may occur by reason of a default in payment of any of said indebtedness due the Ashland Loan and Building Association, and for any amount they might be forced to pay on said loan of the Ashland Loan and Building Association in the case of a foreclosure by said Association, in order to protect the said second mortgage to the Bank of Blaine.

"Signed at Ashland, Kentucky, this 14th day of January, 1931.

"J. J. Hanshaw

"Witness:

"Fanny C. Mirandi."

This instrument was accepted by the bank as a compliance with its demand of additional security to Ebert's

note. Thereupon he was permitted to renew his note payable to the bank and to mature April 4, 1931, and the bank surrendered its right to pursue, and participate in the distribution of, the assets of the grocery company in the bankruptcy proceeding. When Ebert's note matured in April, he disregarded it, and neither paid the interest nor renewed it. Later the bank filed an action against him, his wife, J. J. Hanshaw, and the Ashland Loan & Building Association to collect its note and to enforce its mortgage on the residence. As to J. J. Hanshaw, it alleged that he had not defaulted in the payment of the $40 a month to the loan and building association. The court sustained a demurrer to the petition as to J. J. Hanshaw, and dismissed it as to him. However, the bank served notice on him, calling upon him to defend the action if he desired.

A judgment was rendered in September for the bank's debt, directing the residence sold subject to the mortgage of the loan and building association. It was sold in pursuance of the judgment; the bank bid it in: the sale was confirmed; a deed made conveying it to the bank, and it took possession of the residence. J. J. Hanshaw immediately ceased to pay to the loan and building association the $40 a month—bimonthly—as he agreed to do by the "contract of indemnity."

The loan and building association instituted an action to enforce its lien on the residence, making the bank a defendant. The bank filed its answer which was taken as a cross-petition against J. J. Hanshaw, and summons thereon served on him. No defense was made to the debt of the loan and building association, consequently a judgment was entered for its debt, with directions to the master commissioner to sell the property to satisfy its debt, interest, and costs. To avoid a sale, the bank paid its judgment amounting to $3,006.50, and it is so alleged in its answer and cross-petition. J. J. Hanshaw traversed the cross-petition of the bank; pleaded no consideration for the "contract of indemnity"; that the import and purpose of the "contract of indemnity" was, that he was to have the rent derived from the residence covered by the two mortgages for the purpose of his taking care of the bi-monthly payments to the loan and building association, and that, by reason of the sale under the judgment in the action of the bank against Ebert Hanshaw, he was deprived of the rent and thereby caused to breach the "contract of

indemnity." Also he pleaded the proceedings of the bank against Ebert Hanshaw as a bar to the prosecution of this action as to him.

On the submission of the case, on the evidence and the pleadings, the court dismissed the answer and cross-petition of the bank against J. J. Hanshaw, and decreed that it take nothing on the "contract of indemnity."

J. J. Hanshaw is here insisting that the "contract of indemnity" should be given that construction which will afford him the right to retain possession of the residence, collect, and apply the rent therefrom to the debt of the loan and building association; that the action of the bank against Ebert Hanshaw, the rendition of the judgment therein, the bidding for, and accepting a deed to, the mortgaged property, by the bank, be considered a breach by the bank of the "contract of indemnity," such as to relieve him of his liability on the "contract of indemnity."

He argues the "contract of indemnity" is ambiguous, and that parol evidence is admissible to explain what the parties thereto mean by the language "the payment of the first mortgage indebtedness on the plan and basis by which it is now being paid, etc." also there was no consideration as to him for the execution of the "contract of indemnity"; it "is nudum pactum on account of lack of mutuality in its terms."

In an amendment to his answer, he in substance reproduced his plea "that by reason of the acts and conduct of the bank" he was, and is, "released of all liability on the contract," and further averred "there was no consideration for his execution of the "contract of indemnity."

No responsive pleading was filed to this amendment, and he is now insisting he is entitled, therefore, to a judgment on the pleadings.

The answer and cross-petition of the bank contains an allegation in this language:

"It states that said J. J. Hanshaw on the 14th day of January, 1931 for a valuable consideration delivered to your answering defendant the following contract which is in words and figures as follows," etc.

This allegation was traversed in the first paragraph of J. J. Hanshaw's answer.

The amendment in this respect pleaded affirmatively that which he had previously denied in the original answer. The bank having alleged in its answer and cross-petition that the "contract of indemnity" was executed for a consideration, and he having denied this allegation in his original answer to the cross-petition, the issue was thus made as to the consideration of the "contract of indemnity." Therefore the failure to respond to the amendment did not entitle him to a judgment on the pleadings.

The "contract of indemnity" was executed and delivered by J. J. Hanshaw for the recited consideration of $1 and in consideration of the bank agreeing to extend the time of payment of the $3,800 note of Ebert Hanshaw, and the keeping "their affairs" connected with the indebtedness of Ebert Hanshaw to the grocery company, out of the bankruptcy court. No word or syllable, clause, or sentence is found in the contract relating to the occupancy or possession of the mortgaged property or the rent arising or derived therefrom. There is no insinuation or intimation in it that J. J. Hanshaw expected or intended to have any connection with, control over, or possession of the mortgaged property or the rent therefrom. There is no condition or provision in it concerning or relating to the duty, the privilege, or the right of the bank in the event Ebert Hanshaw failed or refused to pay the interest on, or to renew, the note evidencing his indebtedness to the bank.

The bank and J. J. Hanshaw agreed to reduce to writing the "contract of indemnity"; the latter signed and delivered, and the former accepted it. It is complete on its face. It is in plain, simple, unambiguous language. Their rights are controlled, and must be determined, by its language. Geary-Gay Motor Co. v. Chasteen, 248 Ky. 283, 58 S. W. (2d) 393.

The elemental rules controlling the construction of contracts and governing the admission of parol testimony to alter or vary a contract where it is reduced to writing and signed by the parties were reiterated in Bullock v. Young, 252 Ky. 640, 67 S. W. (2d) 941, 946, in this language:

Every contract must stand as written, in the absence of a plea of fraud or mutual mistake, until reformed on proper pleading and clear and convincing evidence [Hendrix Mill & Lbr. Co. v. Mea-

dor, 228 Ky. 844, 16 S. W. (2d) 482]; and the intention of the parties, as ascertained from the instrument as a whole, is the guide in the carrying out every part of it [Simpson v. Buckner's Adm'r, 247 Ky. 564, 57 S. W. (2d) 464]. In ascertaining their intentions, the chief and most satisfactory index is found in the circumstances whether or not the particular element of the alleged extrinsic negotiations is dealt with in the writing. 'If it is mentioned, covered or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation. This test is the one used by the most careful judges and is in contrast with the looser and incorrect inquiry whether the alleged extrinsic negotiation contradicts the terms of the writing.' Wigmore on Evidence, vol. 4, sec. 2430; Koppers Co. v. Asher Coal Mining Co., 226 Ky. 492, 11 S. W. [2d] 114; Lexington & Eastern Ry. Co. v. Lyons, 104 Ky. 23, 46 S. W. 209, 20 Ky. Law Rep. 516; Southern R. Co. v. Graddy, 91 S. W. 1125, 28 Ky. Law Rep. 1347; White Star Coal Co. v. Pursifull, 186 Ky. 697, 217 S. W. 1020.

"The leading object in every case is to ascertain and effectuate the intention of the parties, and to do so, the language used, the subject-matter, and the purpose or design of the contract may be considered. Owens v. Georgia Life Ins. Co., 165 Ky. 507, 177 S. W. 294. If it is incomplete on its face, parol evidence is admissible to aid in establishing their intenton. Edrington v. Harper, 3 J. J. Marsh. 353, 20 Am. Dec. 145; Harrison v. Talbot, 2 Dana. 258; McSurley v. Venters, 104 S. W. 365, 31 Ky. Law Rep. 963; White Star Coal Co. v. Pursifull, supra; Boone, Foreman & Lackey v. Halteman & Cave Ins. Agency, 226 Ky. 839, 11 S. W. (2d) 973; Ades v. Wash, 199 Ky. 687, 251 S. W. 970; Walker v. Walker, 228 Ky. 357, 15 S. W. [2d] 298. If it is ambiguous, it must be construed so as to give effect to the intention of the parties as expressed by the contract in the light of the circumstances inducing and attending its execution [Caperton v. Clarke, 203 Ky. 191, 261 S. W. 1098; Miller v. New York Life Ins. Co., 179 Ky. 246, 200 S. W. 482; Hawkins & Chamberlain v. Mathews, 242 Ky. 732, 47 S. W.

(2d) 547; Webb v. Nelson, 237 Ky. 76, 34 S. W. (2d) 932], and the actual consideration in every case may be shown by extraneous evidence, even though it may vary the terms of the contract [Piney Oil & Gas Co. v. Allen, 235 Ky. 767, 32 S. W. (2d) 325; Apple v. McCullough, 239 Ky. 74, 38 S. W. (2d) 955].

Parol testimony is competent to establish a parol contemporaneous agreement not inconsistent with the written contract. Ashcraft v. Farmers' Deposit Bank, 225 Ky. 836, 10 S. W. [2d] 276. Also, when the agreement between the parties is one and entire, only a part of it is reduced to writing. Castleman-Blakemore Co. v. Pickrell & Craig Co., 163 Ky. 750, 174 S. W. 749."

The chancellor erred in disregarding these principles; in decreeing J. J. Hanshaw, on the parol evidence, was entitled to have interpolated into the "contract of indemnity," language authorizing him to receive the rent on the mortgaged property, and apply it to the payment of the $40 a month on the debt of the loan and building association, and also declaring the contract breached by the bank by reason of its securing the deed and to taking the possession of the residence.

Even though the recited consideration of $1 and the agreement of Ebert Hanshaw and the bank to keep "their affairs" out of the bankruptcy proceeding of the grocery company were not a consideration for the entering into the "contract of indemnity," it is not doubtful that the extension of time to Ebert Hanshaw in which to pay the $3,800 note with the privilege of renewal of it on the payment of interest was a sufficient consideration to support the "contract of indemnity" as to J. J. Hanshaw. Section 3720b-25, Kentucky Statutes; Steger v. Jackson, 102 S. W. 329, 31 Ky. Law Rep. 434; Davis v. Bank of Clarkson, 144 Ky. 417, 138 S. W. 246; Luigart v. Federal Parquetry Mfg. Co., 194 Ky. 213, 238 S. W. 758; McDevitt v. Stokes, 174 Ky. 515, 192 S. W. 681, L. R. A. 1917D, 1100.

Ex facie, the "contract of indemnity" is an absolute guaranty, and as it concerns J. J. Hanshaw, it is a collateral obligation imposing a liability upon him distinct from that created by the note and mortgage of the loan and building association and the note of the bank —the primary obligations of Ebert Hanshaw. Kellogg

v. Dunn, 2 Metc. 217; Marshall v. Peck & Gillman, 1 Dana, 609; Yeates v. Walker, 1 Duv. 84.

To enforce its performance, it was permissible, therefore, to sue J. J. Hanshaw in a separate action from that prosecuted by the bank against Ebert Hanshaw for the latter's default in the payment of his notes. See cases supra; J. R. Watkins Medical Co. v. Brand, 143 Ky. 468, 136 S. W. 867, 33 L. R. A. (N. S.) 960; Ely v. Bibb, 4 J. J. Marsh. 71; Galbraith v. Shores-Mueller Co., 178 Ky. 688, 199 S. W. 779.

The liability of J. J. Hanshaw on it attached not until, and immediately upon, his failure or refusal to pay the $40 a month according to the plan and basis of payment as set forth in the mortgage of the loan and building association. It was not necessary for the bank, as the beneficiary of J. J. Hanshaw's guaranty, first to proceed against Ebert Hanshaw to recover of him the amount it paid the loan and building association. Pulaski Stave Co. v. Miller's Creek Lumber Co., 138 Ky. 372, 128 S. W. 96.

Nor was there an implied obligation on the part of the bank that it would, or would not, make diligent or any effort to recover of Ebert Hanshaw the principal of the note, in case of his default in the payment of the interest, or in the renewal of his note, before its right of action accrued on the "contract of indemnity" as against J. J. Hanshaw. Galbraith v. Shores-Mueller Co., supra.

Neither the institution of the action of the bank against Ebert Hanshaw to collect its note against him and the enforcement of the mortgage by which it was secured, nor its failure to do so, effected its right of action on the "contract of indemnity" against J. J. Hanshaw on his failure to pay the loan and building association the $40 a month in compliance with the terms of its note and mortgage, since his obligation, by virtue of the "contract of indemnity," is separate and distinct from those of Ebert Hanshaw on his notes and mortgage. McCarroll v. Red Diamond Clothing Co., 105 Ark. 443, 151 S. W. 1012, 43 L. R. A. (N. S.) 475; Galbraith v. Shores-Mueller Co., supra; J. R. Watkins Medical Co. v. Brand, supra; Erwin Davis et al. v. Wells, Fargo & Co., 104 U. S. 159, 26 L. Ed. 686; Lawrence v. McCalmont, 2 How. 452, 11 L. Ed. 326; White Sewing Machine Co. v. Powell, 74 S. W. 746, 25 Ky. Law Rep. 94.

The Bank of Blaine, because of the default of J. J. Hanshaw in the payment of the $40 a month of Ebert Hanshaw's indebtedness to the Ashland Loan & Building Association, was compelled to pay the latter its debt to protect its mortgage. It is therefore entitled to require J. J. Hanshaw, in accordance with the "contract of indemnity," to refund to it the amount thus expended. The court erred in failing so to decree.

Wherefore the judgment is reversed for proceedings consistent with this opinion.