## White Star Coal Company v. Pursifull.

(Decided January 30, 1920.)

### Appeal from Bell Circuit Court.

1.  Contracts—Construction—Intention of Parties.—It is always the duty of the court in construing contracts to ascertain the intention of the parties from the language they employed, and to apply that intention in adjusting the rights of the parties thereunder. Other rules for the construction of contracts are but aids to the court in ascertaining the intentions of the parties, and are not invoked unless the contract by its terms is ambiguous or obscure.

2.  Contracts—Compensation of Contractor.—Where a contractor agreed to do certain work, and to receive as compensation an agreed percentage on "the gross amount actually spent" in the work, and on "the gross amount spent in the construction" of a part of the work, the amount spent for material and supplies used in the work is covered by the terms of the contract and the contractor is entitled to the contract percentage on that sum, and is not confined to the agreed percentage on the amount spent for labor only.

3.  Contracts—Acceptance—Performance.—Where there has been a substantial performance of a contract, and defendant has accepted it as performed, he will be liable to the plaintiff for the contract price, less the damages which he may have sustained on account of a failure to render full performance.

4.  Contracts—Quantum Meruit.—Plaintiff may recover the contract price for part performance when that which is finished under the contract is in accordance with its terms and is accepted and appropriated by defendant who is benefited thereby. But if the non-performance consists in defective work, plaintiff can recover only on a quantum meruit when the defendant accepts the defective performance and is benefited thereby.

5.  Appeal and Error—Absence of Evidence and Instructions in Record.—In the absence of evidence heard, as well as the instructions given, this court can not tell the grounds upon which the jury rendered its verdict, nor its finding, if any, with reference to the violations of the terms of the contract.

6.  Contracts—Consideration to be Paid in Corporate Stock—How Credited.—Where defendant agreed to pay plaintiff in considera-

tion for work done corporate stock at par value, which at the time of payment had trebled in value, such sum should not be credited by the damages found in defendant's favor for non-performance, since he would thereby be given credit for three times the amount which he recovered.

JAMES M. GILBERT for appellant.

N. R. PATTERSON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant and defendant below, White Star Coal Company, is a corporation, engaged in mining coal. About November 1, 1915, it orally contracted with the appellee, Edward Pursifull (plaintiff below), to do certain work pertaining to its mines at Wilhoit, Kentucky, and about the 15th of that month he began work. On December 13, following, an officer of the defendant reduced the contract to writing, which was duly executed by both parties. The material parts of the contract out of which this litigation grew says:

"This contract, made and entered into this the 13th day of December, 1915, by and between the White Star Coal Company, incorporated, of Pineville, Bell county, Kentucky, hereinafter designated as the company, party of the first part, and Edward Pursifull, of Pineville, Bell county, Kentucky, hereinafter designated as the contractor, party of the second part.

"Witnesseth: 1. That the company is desirous of making certain improvements at Wilhoit, Harlan county, Kentucky, such as the building of tramroads, inclines, miners' houses, repairs to tipple, etc., and the contractor is desirous of doing this work for the company.

"2. Therefore it is mutually agreed that the contractor will do all of the necessary grading of the tram roads, including whatever trestles or culverts are agreed upon as necessary, inclines or whatever other grading is desired by the company, at actual cost.

"3. The contractor agrees to superintend all of the work done for the company, personally, in so far as he is able, but he is to be allowed such necessary foremen as are necessary to carry on the work energetically and economically. The contractor is to receive for his compensation or profit, for said grade work or superintendence, fifteen per cent (15%) of the gross amount actually

spent in the grading and other work mentioned above, and the profit of fifteen per cent (15%) above mentioned is to be paid by the company in shares of stock of the company at par value.

"4.   The contractor also agrees to construct not less than ten miners' houses, or as many more as the company may desire, of such design and size as the company may select, and at such places on its lease as the company may select, and is to make such repairs or additions to the tipple, or erect new tipple, for the company at actual cost, and the contractor is to receive for his supervision and personal work a profit of ten per cent (10%) of the gross amount spent in the construction mentioned above. and the said ten per cent (10%) is to be payable in stock of the company at par value.

"The stock mentioned above, that is, as to the grading and the houses, is to be issued when the job or jobs are completed."

In other parts of the contract plaintiff agreed to keep the time of the laborers engaged in performing the work, and to turn in to the company's office reports thereof, and agreed to furnish as much as three teams with drivers, for which he was to receive at the rate of four dollars ($4.00) per day, one-half of which was to be paid in cash and the other one-half in stock of the company. He also agreed to furnish the necessary equipment and tools for carrying on the work and to prosecute it energetically until it was completed.

Sometime in June, 1916, and after the completion of the greater part of the work, a settlement was had between the parties covering plaintiff's percentage on the amount spent for labor, and there was found to be due him for his percentages and for one-half of the services of his teams the sum of $1,250.00, and the defendant thereupon issued to him stock in the company of the par value of that amount.   All of the work specified in the contract was not completed until August or September of that year, but plaintiff, according to his testimony, after receiving the above stock (and perhaps after the work was completed), demanded a final settlement with defendant, and failing to obtain one he procured an attorney who made a similar demand, and he was met with the contention by the defendant that there was nothing due the plaintiff under the contract, since it insisted that he was entitled to the percentages mentioned in the con-

tract only upon the amount spent by defendant for labor in the constructions mentioned therein. Plaintiff claimed, and is contending on this appeal, that he was not only entitled to such percentages upon the item of labor, but that he was also entitled to his agreed rate of compensation upon the amount spent by the company for the material and supplies which went into the work, and he brought this suit asking the court to require defendant to issue to him additional stock to the amount of $2,000.00, which be claimed represented the amount still due him under the contract.

An answer was filed in which the material allegations of the petition were traversed, and a counterclaim for $2,500.00 damages was asserted because of the alleged failure of plaintiff to perform his contract. An amended answer alleged a settlement between the parties at the time plaintiff received from defendant the $1,250.00 stock, which settlement, as alleged, was agreed to in full payment and satisfaction of all of plaintiff's services under the contract. Subsequent pleadings put in issue all those defenses, and the court on motion of the defendant transferred the cause to the common law docket "for the trial of the common law issues raised by the pleadings." The jury, upon the trial of those issues (the record not disclosing what they were) returned a verdict in favor of defendant against the plaintiff for the sum of $190.00, upon which judgment was rendered. The cause thereafter proceeded as an equity case, and upon final submission the court found that plaintiff under the contract was not entitled to any percentage for the value of materials and supplies used in the construction of the tipple, incline or screens, but that he was entitled to his percentage of such material and supplies used in the construction of the miners' houses, and in the grading as well as culverts and trestles therein; that upon this basis there was a balance due him of $1,235.65, which it was adjudged should be paid in stock of the defendant company at its par value. Complaining of that judgment the defendant prosecutes this appeal.

The chief ground insisted upon as error grows out of the construction which the court placed on the contract, the defendant challenging the correctness of that construction. For convenience of reference we have separated the contract into clauses. designating them 1, 2, 3 and 4, which figures do not appear in the original.

The law is, without exception, that it is the duty of the court having before it the construction of a contract to ascertain the intention of the parties from the language employed in the entire contract, and to give the construction which conforms to that intention. Owens v. Georgia Life Insurance Company, 165 Ky. 507, and Keen v. Ross, 186 Ky. 256. Other rules are subsidiary to the one mentioned, their office being only to assist the court in arriving at the intention of the parties.

Guided by the above rule, we find that in clause 1 of the contract all of the different character of work contemplated by the defendant is referred to. In clause 2 the plaintiff agrees to "do all of the necessary grading of the tram roads, including whatever trestles or culverts are agreed upon as necessary, inclines or whatever grading is desired by the company." In clause 3 it is agreed that plaintiff may receive as his compensation "for said grade work . . . fifteen per cent (15%) of the gross amount actually spent in the grading and other work mentioned above." The language is broad enough to fix that percentage as plaintiff's compensation for the entire work, since all of it is "mentioned above" in clause 1 of the contract. But we are inclined to the construction given by the court confining the fifteen per cent commission to the grading "and other work mentioned above" as referring only to the work mentioned in clause 2 so as to include trestles and culverts, since they constitute a part of the structure requiring grading, and also include what grading might be necessary in the construction of inclines, as grading is a necessary part of their construction. Whatever may be the true construction of the contract as to the particular item or items of the entire work upon which the fifteen percentage should be calculated, it is quite plain from the language employed that the sum upon which it should be calculated was to be that which represented "the gross amount actually spent." It would do violence to the language employed to confine such amount to the sum expended for labor only, because plaintiff agreed to do something at least to the trestles and culverts. He could not grade them, so that his duties with reference to them necessarily required him to construct them, and "the gross amount actually spent" in such construction would beyond question include any material or supplies used therein.

The defendant seeks to invoke the rule that where a contract is ambiguous and the intention of the parties by reason thereof is obscure, oral evidence may be heard for the purpose of showing the contemporaneous construction of the parties as evidenced by their actions, conduct and words, the soundness of which we do not question, but we do not regard the contract under consideration as one calling for its application. It is only invoked when the contract is so ambiguous and obscure as to be plainly susceptible of two or more constructions. We think the language of the contract under consideration is susceptible of only one reasonable construction, i. e., that it provides for the fifteen per cent commission on the total cost of the "grading and other work mentioned above," and that the court was not in error in so construing it.

Defendant makes the same contention with reference to clause 4 of the contract, which deals with the erection of the ten miners' houses, but the language of that clause is less difficult of construction than is the language in clause 3. It provides for ten per cent commission on the "gross amount spent in the construction mentioned above." The ten miners' houses constitute a part of "the construction mentioned above." Material and supplies are necessary for the construction of houses. The cost of such material and supplies constitutes items *spent* in their construction as much as does cost of labor in their construction, and we think there can be no doubt but that the court properly allowed plaintiff ten per cent on the total cost of the houses under clause 4 of the contract.

Much is said in brief of defendant's counsel with reference to the court allowing percentage upon material not constituting a part of the grading, trestle or culvert work, some of which it is claimed belonged to other parties and had no connection with the work covered by the contract, but an examination of the evidence shows that no such items were taken into consideration by the court. Defendant's bookkeeper testified that the gross amount spent for the grading of the tram roads and for the trestles and culverts, including the materials and supplies that went into the latter two, was $9,874.36, but the court allowed the fifteen per cent commission provided by the contract for this work on only the sum of $9,156.31, so that if any error was committed it was against the rights of the plaintiff and not against the defendant. The same witness also testified that the total

cost of the ten miners' houses was $7,014.17, which was the basis adopted by the court in its judgment and upon which it allowed plaintiff ten per cent.

Having disposed of the questions growing out of the construction of the contract, it is next insisted that plaintiff can not recover upon the contract, since he failed to perform it, and that his only remedy, if any, is a suit upon a *quatum meruit* for the reasonable value of the work which he actually performed in carrying out the contract, and that he did not plead or rely upon any such right of action, having declared only upon the contract. This insistence is founded upon the verdict of the jury awarding defendant $190.00 damages. At the outset we find ourselves wholly uninformed, from anything appearing in the record, as to the grounds upon which that verdict was rendered. Only such portions of the testimony heard upon the trial before the jury as the parties saw proper to file are contained in the record. No instruction offered or given to the jury upon that trial is brought here for our inspection, and we are entirely ignorant as to the issues which the court submitted to the jury. It may be that the insignificant sum of $190.00 as compared with the amount involved in this contract was damages allowed for only a few days' absence by plaintiff from the work when he should have been there superintending it. Or it may be that for a like time he failed to furnish his teams when he should have done so. Similar surmises might be indulged in with reference to other small and unperformed portions of the contract. Under these circumstances we feel that we are justified in saying that the record shows a substantial performance by the plaintiff of his obligations under the contract. As a matter of fact the testimony found in the record before us shows such substantial performance. It is insisted that the verdict of the jury contradicts this, and since there is no appeal from it we are concluded by that contradiction. Perhaps there might be plausibility in this argument if this were not an equity case and the verdict of the jury was only advisory to the court; and further, if the record disclosed the particular acts of non-performance constituting the basis of that verdict.

But, independent of these considerations, it may be confidently stated that the law in some cases permits the contractor to recover for part performance the contract price *pro tanto* for the finished portion of the work where

the other party accepts it and is benefited thereby. Illustrating, if A contracts with B to manufacture and deliver ten wagons of certain specifications and B manufactures five of them according to specifications and delivers them to A, who accepts them, B can recover the contract price for the five wagons, subject to whatever damage A might sustain by reason of B's failure to manufacture the other five.

A different principle prevails where the contractor attempts entire performance but does the work in such a defective way as not to comply with the specifications and the non-performance pervades the entire work. In that case, if the other party to the contract appropriates and is benefited by the attempted but defective performance, he will be liable on a *quantum meruit* for the value thereof, and not liable on the contract. Using the illustration just given, if B should manufacture all of the ten wagons, but not according to the specifications, A would not be compelled to accept any of them, but if he did, he would be liable to B on a *quantum meruit* only. Foeller v. Heintz, 24 L. R. A. (N. S.) 327, and annotated notes; 13 Corpus Juris. 693, and Buckwalter v. Bradley, 31 Ky. Law Reporter 1177.

The text in Corpus Juris, on this point, says:

"However, in such cases, where the part performance has been beneficial to the other party, and he has accepted and retained the benefits thereof, the party partially performing is entitled to recover either the reasonable value of such performance or the contract price *pro tanto,* subject to the reciprocal right of the other party to recoup such damages as he has suffered from the failure of plaintiff to fully perform, or to recover such damages in a separate action. The element of acceptance must be present together with that of the benefit received."

In a note to that part of the text authorizing a recovery for "the contract price *pro tanto*" are cases from many of the states, including Buckwalter v. Bradley, *supra.* The general rule from all the authorities seems to be that there can be no recovery of the entire contract price for only a part performance, though there may be a recovery, on the contract, for a part performance if such part is performed in accordance with the requirements of the contract and is accepted by and beneficial to the defendant.

In the Buckwalter case there was a contract to get out

and deliver a quantity of tanbark and crossties from a large body of land. The contractor who agreed to do the work abandoned it after partly performing it. It was insisted that the contractor could recover nothing for the work he had done, but this court held otherwise and said:

"The rule in this state is that if the person with whom · the contract is made fails to comply with it after performing a part of the contract, he may recover for what he has done subject to a just offset by the other party for the damages which he has sustained from the breach of the contract. When Buckwalter had hauled in the stuff to Brady's switch which Patton had left on the land, he was just where he would have been if Patton had hauled it in, less the cost of the hauling."

So we conclude that if the item of $190.00 was presented in this record in such a way as to conclusively show that it was based upon a violation of the contract, that this fact would not prevent plaintiff from recovering the contract price for the work which he did perform and which defendant accepted and of which it got the benefit.

The defendant insists that the court erred in not crediting the $1,235.65, which it found to be due plaintiff, with the $190.00. It will be remembered that the contract provided that plaintiff should be paid in stock of the company at par value, and the proof shows that the stock had advanced at the time of the trial to three times its par value. To have credited the amount to which plaintiff was entitled in stock at par value with $190.00 would have taken away from him the right to $570.00 worth of stock. The verdict of the jury was for damages measured in dollars, and not for stock worth three times that amount. It, however, would be but just and equitable to require plaintiff to pay the $190.00 before receiving his stock of $1,235.65, and upon a return of the case the judgment should be modified to this extent.

Our reading of the testimony convinces us that there was never any settlement of the claim sued on, as contended for by the defendant. The only fact relied on to support that contention is the issual to plaintiff of the $1,250.00 of stock in the company, and no witness says that it was accepted by plaintiff in full settlement of all the claims arising from the contract. On the contrary, the testimony of defendant's officers on the trial of the jury issue was to the effect that such stock certificate

was issued to plaintiff through a mistake, which, if so, it could not be given the effect of producing a settlement between the parties.

Upon the whole case we are unable to find any error prejudicial to the substantial rights of the defendant, and the judgment is affirmed.