## Choate v. Louisville Railway Company.

(Decided April 29, 1932.)

WOODWARD, HAMILTON & HOBSON for appellant.

PETER, LEE, TABB, KRIEGER & HEYBURN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On the afternoon of April 29, 1930, the appellant and plaintiff below, Benjamin D. Choate, Jr., who was under 21 years of age, boarded a street car of appellee and defendant below, Louisville Railway Company, going north on Preston street at the junction of it and Oak street, his destination being at some point east on Walnut street. He claims to have paid his fare and obtained from the conductor on that car a transfer to one going east on Walnut street, and when he arrived at the latter street he vacated the Preston street car and boarded the first one going east on Walnut street. He also claims that as he ascended the steps of the Walnut street car the conductor was standing in its vestibule with one hand on the bell cord and the other one extended for the reception of fares or transfers, and that he attempted to put his transfer into the conductor's extended hand, but whether he succeeded in doing so he was not positive. On the contrary, he expressly stated that he did not see the transfer rest in the conductor's hand, the latter at the time looking in the direction of the steps where passengers were entering the car.

Plaintiff with his companion, who was immediately in front of him, entered the car and had gotten near its front when he was informed by the conductor that he had not paid his fare. Plaintiff insisted that he had done so in the manner indicated, and pointed to a slip of paper on the floor of the vestibule as being his transfer, but he declined to pick it up and deliver it to the conductor. The latter contended that plaintiff had not delivered to him either fare or transfer, and that the paper on the floor was mutilated by being torn in two, the detached part containing, among other things, its date. Therefore the conductor insisted that the alleged transfer on the floor was only a piece of a transfer bearing no date whatever, and for that reason he declined to accept it, even if it had been properly tendered to him. A demand was thereupon made on plaintiff for the payment of his fare, which he declined to do, and the conductor informed him that unless he did so he would have to depart from the car. He vigorously refused to do either, and, when the conductor attempted to take hold of him to eject him from the car (and which the evidence uncontradictedly shows was without violence), plaintiff resisted and knocked the conductor back on a seat. About that time

the next square was reached and the motorman's attention was attracted to what was going on and upon being informed by the conductor of the situation, the motorman took hold (in the same manner) of plaintiff's feet, while the conductor held his arms, and he was gently placed upon the street in a standing position on the outside of the car.

The plaintiff testified to his theory of the case as so outlined, and other witnesses introduced by him in a measure supported some parts of his testimony, while the conductor was also supported in his testimony by other witnesses introduced by defendant, and which to some extent preponderated over the testimony introduced by plaintiff. However, no witness testified that plaintiff put the alleged transfer that he possessed into the hand of the conductor, nor did they deny that the paper on the floor, whatever it was, was mutilated. Neither was there any testimony of excessive force, except plaintiff, and perhaps one of his witnesses, testified that defendant's employees handled him rather roughly. However, that issue was submitted to the jury by an appropriate instruction and of which no complaint is made, and the jury determined it against plaintiff.

This action was filed by plaintiff, through his father as next friend, against defendant to recover damages for his alleged wrongful and forcible ejection from the car, and which he placed at $10,000. The answer denied the material averments of the petition and pleaded the facts to which the conductor testified in justification of the complained of ejection. Following pleadings made the issues (except the withdrawal of first paragraph of answer, see post) and upon trial the jury under the instructions given to it by the court returned a verdict for defendant, followed by a judgment dismissing plaintiff's petition, and to reverse it he prosecutes this appeal.

The only argument made by learned counsel for plaintiff for a reversal consists in criticisms of instructions No. 1 and No. 3, the others being expressly or tacitly accepted as correct. But in order to fully present the case we have concluded to insert herein, not only the two criticized instructions, but also No. 2, likewise given by the court. Those three instructions read:

"1. It was the duty of the plaintiff when he boarded the defendant's car, to tender the conductor

as he had transferred from another car, a transfer slip which was not mutilated, and if you believe from the evidence that he did not tender the conductor a transfer slip or tendered a transfer slip which was mutilated, then in that event the law is for the defendant and you should so find; but if you believe from the evidence that he tendered the conductor a transfer slip and that such transfer slip was not mulitated, then the law is for the plaintiff and you should so find.

"2. 'Tender' as used in these instructions means the offer to deliver the transfer to the conductor with the opportunity on the part of the conductor to receive same.

"3. If you believe from the evidence plaintiff, in offering said transfer slip, did carelessly or intentionally throw a slip upon the floor, then in that event such action on his part was not a tender to the conductor of the slip."

In an amended answer defendant withdrew the first paragraph of its original answer wherein it denied the ejection, and other grounds for recovery, and relied exclusively on the justification therefor contained in the second paragraph of its original answer, thus assuming the burden; but at the trial the court erroneously ruled it to be on the plaintiff, and, since it succeeded in the litigation, we will not further refer to that error and mention it only because the criticisms of the complained of instructions are based largely upon the assumed fact that plaintiff properly had the burden of proof. Such criticism consists in the contention that instruction No. 1 is, not only confusing, but that its form was in reverse order from the usual and ordinary instructions in negligence cases, in that it starts out with defining the duty of plaintiff instead of placing before the jury the duty of defendant as a common carrier of passengers, and for which reason, it is argued, that it was so confusing as not to be properly understood and applied by the jury. We quote from brief the argument on this issue:

"It is an elementary proposition that where the burden is upon the plaintiff, the first instruction should submit plaintiff's right to recover. . . .

This instruction is written as though the burden of proof in the case was upon appellee.''

It will thus be seen that the main reason for the criticism is based upon the fact that the burden was properly placed upon the plaintiff when, as we have seen, he was not entitled to it, hence the reason for the argument disappears. However, we are unable to follow the reasoning of counsel or to approve the conclusion they reach, since an inspection of the instruction clearly reveals that it submits plaintiff's theory of the case, and expressly says that: ''If you believe from the evidence that he (plaintiff) tendered the conductor a transfer slip and that such transfer slip was not mutilated, then the law is for the plaintiff and you should so find.'' In other words, plaintiff was thereby given the right to a verdict in his favor, if and provided the jury believed that he tendered an unmutilated transfer slip in the manner pointed out in instruction No. 2 defining what would be a proper tender, and which definition is not criticized by learned counsel for plaintiff. At another place in brief for appellant it is said: ''The issue in this case was well defined and should have been limited to the single question of whether appellant tendered his transfer to the conductor.'' That, as we have seen, was expressly done in instruction No. 1 in the language last above inserted, but the court also therein submitted to the jury, whether or not the transfer, if legally tendered, was a complete and valid one by not being so mutilated as to destroy its efficacy as such, and we find nothing in counsels' brief contesting the duty of the court to submit that issue, there being evidence to support it.

However, it is argued in brief that the contention of defendant that the transfer was mutilated should not have been submitted, because there was no evidence to show that it was not the one given to plaintiff by the conductor on the Preston street car from whom he obtained it. But, whether that be true or not, a sufficient answer is that this action is not based on any failure of duty or other dereliction or negligence of the conductor of that car, but only on what transpired on the Walnut street car after plaintiff boarded it. Numerous are the cases where the conductor of a common carrier of passengers was held justified in declining to receive a ticket, which by mistake of the agent who sold it was a different one than what the passenger called and paid for. Illinois

Central Railroad Company v. Jackson, 117 Ky. 900, 79 S. W. 1187, 25 Ky. Law Rep. 2087, and Lexington and Eastern Railroad Co. v. Lyons, 104 Ky. 28, 46 S. W. 209, 20 Ky. Law Rep. 516. In such cases the wronged passenger is not without remedy against the carrier for any wrongful ejection, but his cause of action consists in the wrong done him by the agent of defendant who delivered to him a different ticket than the one he requested and paid for. In such cases it is held by this and other courts that the conductor who receives the fare has the right to act upon the ticket presented to him, and, if he does so without unnecessary force or violence, no cause of action would accrue to the passenger therefor, and the latter would be relegated to his cause of action arising from the dereliction of the agent who delivered to him the improper ticket. The same principle applies as to a transfer. No pleading of plaintiff based his cause of action upon any dereliction of the conductor who delivered to him the transfer in this case, and therefore the criticism of plaintiff's counsel now under review is without substantial merit.

By way of supplementing our disposition of counsel's criticism of the form of the instruction, we might add that an instruction offered by them, but which the court refused, possesses the same alleged vice, i. e., it began with defining the duties of plaintiff with respect to tendering his fare, or transfer, entitling him to be carried on that car, instead of first defining the duties of the employees of defendant in charge of the car with reference to such matters. The court seems to have patterned after such offered instruction in forming the one that was given, but in which the element of mutilation was included, whilst it was omitted from the one offered by counsel. It is well settled that no objection is available to an instruction if it follows in its criticized respects one that was offered by the litigant objecting to it.

Upon the whole case we find no error prejudicial to the substantial rights of plaintiff, and the judgment is **affirmed.**