## Bullock v. Young.

(Decided Dec. 12, 1933.)

(As Extended on Denial of Rehearing Feb. 20. 1934.)

642

WOODWARD, HAMILTON & HOBSON and WILBUR FIELDS for appellant.

GORDON, LAURENT & OGDEN for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

For many years prior to 1925, H. E. Bullock and T. L. Young were associated in the operation of several coal companies, both producing and selling, controlling them for the profits of co-operative control of both ends of the industry. Two or three of the corporations were engaged exclusively in marketing coal and for that reason Bullock and Young were anxious for the control of the Carrs Fork Coal Company which owned and operated certain mines in Eastern Kentucky. To secure the control of it, it was necessary that they buy approximately 200 additional shares of the stock of that company. T. J. McConnell and W. J. Raybould owned 211 shares of its stock. On the 18th day of December, 1923, Bullock, Young, and one L. H. Stone contracted to buy and bought the 211 shares at $200 per share. They executed and delivered a writing evidencing their purchase, and their joint notes therefor, for $42,200. Stone became insolvent and dropped out of the transaction, and, as the $42,200 became due, and renewals were required, Young signed them with Bullock. Within about

two years after the contract for the purchase of the 211 shares, Bullock and Young got themselves in a position to acquire administrative control of the corporation, which was accomplished in June, 1925. The election of directors was held that month. Some time prior to the election, Bullock, Young, and Frank E. Wood, a practicing attorney of Cincinnati, Ohio, agreed to elect themselves as president, treasurer, and secretary, respectively. From this point, the digression of the asseverations of Bullock and Young becomes the vital issue of the case. Frank E. Wood was not a party to the purchase of the McConnell and Raybould stock, nor did he sign any notes executed for it. His only connection was as an attorney of the several corporations under the control at that time of Bullock and Young. At the time Young agreed to go in with Bullock and purchase the 211 shares, he was without means with which to pay for his portion of the stock, which fact was known to Bullock. For this reason he agreed to participate in the purchase of the stock on the condition that he be paid a salary by the Carrs Fork Coal Company and that his salary be applied to the payment of his proportion of the stock, and Bullock consented to this arrangement. He claims that on the day the meeting was held to elect directors, which would enable Bullock and himself to acquire the cherished control of the Carrs Fork Coal Company, he, Bullock, and Wood agreed on the side that a salary would be voted to Bullock of $7,500, to Wood $2,500, and to Young, $2,500, as president, treasurer, and secretary, respectively, and that, as the salaries accumulated they would be applied by Bullock to the payment of his and Bullock's notes outstanding for the purchase price of the 211 shares of stock of the Carrs Fork Coal Company. He claims this arrangement was not put through at that meeting which was adjourned to Wood's office where later it was carried out by a resolution of the board of directors. At the time it was made by the three of them, it was agreed that Wood would reduce to writing their agreement showing the amount of their salaries and that Bullock was to receive, as trustee, and apply, the same as they accumulated on the payment of his and Young's obligation for the 211 shares of stock. On May 12, 1925, the board of directors voted Bullock's salary as president at $7,500; Wood's as secretary at $2,500; and Young's as treasurer at $2,500, per year. They continued in office until

July 8, 1926, during which time Bullock drew a salary of $625 per month for himself. On July 8, 1926, he was re-elected president at a salary of $2,500 per year. The record of the corporation, which was in the possession of Bullock as president, charged $2,500 as Young's salary. It fails to reflect the payment of the salary to Young. An entry therein shows payment to Wood, on account of salary, $2,000 on May 6, 1926, $500 on May 31, 1926, and on July 30, 1926, $208.33. On July 18, 1926, Wood was elected attorney of the company at a salary of $2,500, payable in equal monthly installments. The record also shows that on May 28, 1926, a certificate of 150 shares of stock was issued to Frank E. Wood. It was signed by Bullock as president and Wood as secretary. A certificate of stock was issued to Bullock for 200 shares, on the 27th day of January, 1927. An indorsement on the back of it shows 12½ shares transferred to Frank E. Wood and 7½ shares to H. E. Bullock. The certificate of 12½ shares to Wood, issued on the 4th day of June, 1927, was canceled July 12, 1927, and a new certificate, No. 376, issued to Bullock, which was originally issued to Bullock on January 27, 1927. On December 11, 1928, 52 shares of the 120 shares issued to Wood were transferred by Wood to Bullock. Wood, on May 15, 1926, was paid attorney's fee of $3,000; also March 12, 1926, $30, and July 6, 1926, $479.49. The Carrs Fork Coal Company earned a total dividend of 14 per cent. after December 18, 1925.

The written contract, dated June 11, 1925, between Bullock, Young, and Wood, recites that the board of directors of the Carrs Fork Coal Company had voted salaries to Bullock, Young, and Wood, respectively, at $7,500, $2,500, and $2,500 per annum, and that it had been agreed "by and between the parties hereto that all of the salaries referred to above, shall be used exclusively for the purpose of paying off obligations of said parties, all or either of them, still remaining, on account of the purchase of the said McConnell and Raybould stock." "Now, therefore, in consideration of the foregoing and of the sum of One ($1.00) Dollar, each paid to the other, the receipt of which is hereby acknowledged, said parties do hereby transfer and assign all of their respective right, title and interest of, in and to, said salaries as the same become due and payable, and paid to Harry E. Bullock, Trustee. Said Bullock to receive and accept said salaries with full power to give to

the Carrs Fork Coal Company a proper receipt and release therefor, he to apply the same as and when received in liquidation of said indebtedness.''

It will be observed from the above resume of the facts that Young has received neither .salary nor stock under the arrangement between him, Bullock, and Wood.

This action was brought in the Jefferson circuit court against Bullock to recover one-half of the salaries, or one-half of the McConnell and Raybould stock. The petition set forth the execution and delivery by Bullock, Young, and Stone of their contract for the purchase of the 211 shares of stock of McConnell and Raybould, and alleged that under the contract between him, Bullock, and. Wood, he was the owner of one-half of the combined salaries, amounting to $7,425. He sought to recover of Bullock this sum or that number of shares of stock of the Carrs Fork Coal Company as the $7,425 would purchase at the price of $150 per share.

Bullock in his answer admitted the written contract, but denied the stock was purchased of McConnell and Raybould at $150 per share and averred the purchase price was $200 per share, and that the interest of Young in the combined salaries was one-fifth thereof and no more. He also denied that he had refused to account to Young for it or any portion of the stock purchased with Young's salary.

In the second paragraph he charged that the amount received by him in cash under the trust agreement was $13,891.25, and that he had paid the interest on certain notes, income tax, and other expenses, which when deducted from the $13,891.25, there remained of the trust fund $11,891.25, and that for this reason the total amount of Young's part was one-fifth the combined salaries available for the purchase of stock or $2,378.25, and the actual cost of 12 shares of said stock is and was $2,400.

He prayed that the petition be dismissed with cost. Young filed an amended petition, setting up a new and independent cause of action against Bullock. The summons thereon was served out of Jefferson county. For that reason it was quashed and no further steps were taken on the amended petition. Young's reply to Bullock's answer completed the issues. Later Bullock filed an amended answer, counterclaim, and set-off, wherein he sought to recover of Young on an $8,000 note, ex-

ecuted and delivered on November 25, 1925, by the Wallins Creek Coal Company, by Young as president, the liquidating agent of the Wallins Creek Coal Company, and Young, individually, payable to the Carrs Fork Coal Company, ninety days after date, and also on a $1,000 note dated April 27, 1926, signed in the same manner by the same parties, payable to the Carrs Fork Coal Company, four months after date. He charged that these notes were transferred by the Carrs Fork Coal Company to Hiram H. Owens, in August, 1926, and thereafter on August 23, 1929, they were transferred by Owens to him, and that he was the holder thereof. In his reply Young charged that, prior to the execution of the notes, he and Bullock agreed to sign these notes to support the credit of the Wallins Creek Coal Company, and that he had signed them in compliance with this agreement, but that Bullock, in violation of his agreement, had delivered the notes without himself signing them; that the $8,000 note was one of several notes, aggregating $41,985.75, executed and delivered by the Wallins Creek Coal Company to the Carrs Fork Coal Company and by it assigned to a bank and secured by collateral security of a fair cash value of $58,043.10, and from which Bullock had collected certain dividends and was accountable to Young for his interest therein. He charged these two notes were executed and delivered by the Wallins Creek Coal Company and himself, individually, to the Carrs Fork Coal Company of which Bullock was at the time president, subject to the agreement between him and Bullock that both of them were to sign individually the notes of the Wallins Creek Coal Company and thereby become equally liable; but without his knowledge Bullock had delivered the notes without signing them. The issues were completed on the amended answer, set-off, or counterclaim of Bullock by appropriate pleadings. The case was tried before a jury. At the conclusion of the evidence, Young tendered an amended petition, in which he quoted from the original petition, its language concerning the stock of the Carrs Fork Coal Company, and expressly withdrew all that portion of it which alluded to the stock of the Carrs Fork Coal Company. He also therein withdrew the alternative prayer and alleged that he had demanded on the 21st day of December, 1926, of Bullock, the shares of stock of the Carrs Fork Coal Company, which he agreed to pay for with the same, or

an amount equal to one-half of the combined salaries of Bullock, Young, and Wood, and that Bullock had received all of the salaries under the agreement, but had failed and refused to deliver the stock or to account to him for the one-half of the combined salaries amounting to $7,425, with interest from July 1, 1926, until paid; and he prayed judgment against Bullock for this amount. He also tendered an amended reply to the amended answer, counterclaim, and set-off, and therein charged that he was an accommodation maker and surety on the $8,000 note, and that it had been discounted by a banking institution which had theretofore held a note for $8,000, and had accepted as a renewal thereof, February 23, 1926, the $8,000 note sued on in the answer, counterclaim, and set-off of Bullock.

Thus it had been paid, and, by reason of such payment, his liability as accommodation maker and surety thereon was discharged. The amended petition and reply were filed over the objection of Bullock. By agreement of the parties, the affirmative allegations of the amended petition and the amended reply were controverted of record. On submission to the jury, under the instructions of the court, a verdict was returned in favor of Young for $6,445.82, with 6 per cent. interest per annum from the 21st day of December, 1926, until paid. A judgment was accordingly entered. Chiefly for reversal Bullock presents mere technicalities of but little weight and doubtful relativity. He insists that the original petition does not state facts sufficient to constitute a cause of action; that a recovery was allowed "on the theory of recission"; "the recission theory was adopted after the introduction of all evidence by an amendment improperly allowed to be filed"; the contract was rescinded "after benefits had been awarded to plaintiff"; a "rescindable theory is not applicable to a three-party trust contract in a two-party suit." He argues that the claim of Young is "for breach of trust, in its nature a demand for damages"; the court erred in permitting the amended reply to be filed, and "in allowing evidence of the parol agreement of defendant to sign as co-surety"; and that this "was not properly plead." He also argues that the evidence is not sufficient; no judgment should have been allowed on the parol agreement; the instructions are erroneous; the oral contract as to suretyship is not available as a defense to his counterclaim and set-off; it was not prop-

erly pleaded; the contract to sign as cosurety was within the statute of frauds and the statute of limitations; that Young is primarily liable on the notes, and his liability is controlled by section 3720b-119, Kentucky Statutes; that the court erred in practically all of its rulings; Young's pleadings are insufficient; the evidence is incompetent; that he was entitled to a peremptory instruction as to Young's cause of action, and also as to his set-off and counterclaim.

It is sufficient to say that the original petition states a cause of action. The amended petition appropriately withdrew so much of the original petition as sought a recovery in the alternative. It states no new cause of action. Other than a mere assertion in the brief of Bullock, no defects in the petition as amended are pointed out. The substance of the defense in the amended reply is that Bullock and he agreed to sign the $8,000 and the $1,000 notes, because both of them at the time were equally interested in the continuation and success of the business of the Wallins Creek Coal Company, whose credit was below normal, and that in violation of the agreement, Bullock delivered them to the Carrs Fork Coal Company of which he was president, and caused them to be transferred to the bank without his signature. The amended reply, as an additional defense, charged that the $8,000 note had been transferred by the Carrs Fork Coal Company to a bank and later paid by a renewal note, which had been accepted by the bank in lieu of the $8,000 note sued on, thus discharging the latter. The amended pleadings were properly filed.

Section 134, Civil Code of Practice, vests in the trial court a broad discretion when considering a motion to file an amended pleading. It is an accepted rule of practice, unless it affirmatively appears that the trial court has abused his discretion, that this court will not reverse because of the filing of an amended pleading. The only limitation on its discretion in allowing an amended pleading to be filed is that it must be in furtherance of justice and not change substantially the cause of action or defense. Palmer v. Smith, 204 Ky. 82, 263 S. W. 773; Louisville & N. R. Co. v. Tuggle's Adm'r, 151 Ky. 409, 152 S. W. 270; Honaker v. Crutchfield, 247 Ky. 495, 57 S. W. (2d) 502; Duff v. Hodges' Guardian, 213 Ky. 392, 281 S. W. 183. Bullock, on the filing of the amended pleadings, did not request a post-

ponement or attempt to show he could not proceed with the amendments filed. Section 136, Civil Code of Practice. If he were unprepared to proceed with the trial with them filed, or desired a continuance because they were filed, he should have filed his affidavit showing ground therefor. Troendle Coal Co. v. R. Morgan Coal, Coke & Mining Co. (Ky.) 114 S. W. 312; Honaker v. Crutchfield, supra. There is no showing that the court, in proceeding with the trial after they were filed, abused his discretion. Provident Life & Accident Ins. Co. v. Hancock, 214 Ky. 142, 282 S. W. 1104. There is no suggestion in his brief that he objected to the amended petition, or the amended reply, because either of them was not verified. It does not appear that he called the attention of the court to the fact that they were not verified and that the court considered the topic of verification or ruled thereon. An objection to a pleading for want of verification should be by rule against the party failing to verify it and, on his failure, to have it stricken (section 138, Civil Code of Practice; Wheeler v. Wales, 3 Bush, 225; Harris v. Ray, 15 B. Mon. 628); or on the court overruling his motion to except to the decision (Cobb v. Stewart, 4 Metc. 255, 83 Am. Dec. 465; Mason v. Mason, 5 Bush, 187). The rule is, if the amendment is in time and otherwise proper, its filing should not be denied for want of verification. New York Life Insurance Company v. Long, 177 Ky. 445, 197 S. W. 948. In the absence of the record affirmatively showing that Bullock's objection to the filing of the amended petition and reply was based on the fact that they were not verified, if an error were committed in permitting them to be filed without the verification, in the circumstances, it was a harmless one, insufficient to warrant a reversal.

The fact that Stone was insolvent, and, on this account, dropped out of the transaction, concerning the purchase of the stock of the Carrs Fork Coal Company by him, Bullock, and Young, as per the written contract and the notes, is not disputed. With Stone out, in the absence of an expressed agreement to the contrary, the inference is that the stock was to be divided between Bullock and Young in equal parts or at least in proportion to the purchase price respectively paid by them. The contract relating to the salaries of Bullock, Young, and Wood expressly provides that the combined salaries of the three, as they were earned, were to be received

by Bullock in trust and applied by him to the discharge of the obligations of the parties, who had signed the contract to purchase the stock of McConnell and Raybould in the Carrs Fork Coal Company.

It is perfectly apparent the salaries were fixed without regard to the quantity or value of the services to be performed; that they were so fixed as to induce the other members of the board of directors to acquiesce in each of them receiving the respective salaries requested to be allowed; and that their allowance, so far as Bullock, Young, and Wood were concerned, was a mere scheme designed to aid Bullock and Young to pay for the McConnell and Raybould stock.

At that time Wood had signed neither the contract nor the notes for the stock. The proven facts, and the agreement to appropriate the combined salaries of the three to the payment of the notes existing in virtue of the contract of Bullock and Young with McConnell and Raybould for the stock, sufficiently establish that Wood was not a beneficiary of the trust created by the contract signed by him, Bullock, and Young, concerning this stock, and that Bullock and Young were the sole beneficiaries of the trust thereby created. The fact Wood is not a party to the action is in no way prejudicial to the rights of Bullock. He is neither a necessary nor a proper party. The contract of Young and Bullock with McConnell and Raybould, their notes for the purchase price of the stock, and the trust agreement do not show or indicate how the trust fund created by the application of the salaries of Wood, Bullock, and Young was to be divided.

The actual decisive question is the competency of the parol testimony showing the agreement of Bullock and Young as to the division of the trust fund between them; Bullock insisting that their rights should be determined exclusively by the written contract.

The contention of Young is that this is a case of partial integration; i. e., a certain part of the real agreement was embodied in the written contract, but other parts were left out, and that the writing is applicable to so much of the agreement as it embodied, but not the remainder.

Every contract must stand as written, in the absence of a plea of fraud or mutual mistake, until re-

formed on proper pleading and clear and convincing evidence (Hendrix Mill & Lumber Co. v. Meador, 228 Ky. 844, 16 S. W. (2d) 482); and the intention of the parties; as ascertained from the instrument as a whole, is the guide in the carrying out every part of it (Simpson v. Buckner's Adm'r, 247 Ky. 564, 57 S. W. (2d) 464). In ascertaining their intentions, the chief and most satisfactory index is found in the circumstances whether or not the particular element of the alleged extrinsic negotiations is dealt with in the writing. "If it is mentioned, covered or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation. This test is the one used by the most careful judges and is in contrast with the looser and incorrect inquiry whether the alleged extrinsic negotiation contradicts the terms of the writing." Wigmore on Evidence, vol. 4, sec. 2430. Koppers Co. v. Asher Coal Mining Co., 226 Ky. 492, 11 S. W. (2d) 114; Lexington & Eastern Ry. Co. v. Lyons, 104 Ky. 23, 46 S. W. 209, 20 Ky. Law Rep. 516; Southern R. Co. v. Graddy, 91 S. W. 1125, 28 Ky. Law Rep. 1347; White Star Coal Co. v. Pursifull, 186 Ky. 697, 217 S. W. 1020.

The leading object in every case is to ascertain and effectuate the intention of the parties, and to do so, the language used, the subject-matter, and the purpose or design of the contract may be considered. Owens v. Georgia Life Ins. Co., 165 Ky. 507, 177 S. W. 294. If it is incomplete on its face, parol evidence is admissible to aid in establishing their intention. Edrington v. Harper, 3 J. J. Marsh. 353, 20 Am. Dec. 145; Harrison v. Talbot, 2 Dana, 258; McSurley v. Venters, 104 S. W. 365, 31 Ky. Law Rep. 963; White Star Coal Co. v. Pursifull, supra; Boone, Foreman & Lackey v. Halteman & Cave Ins. Agency, 226 Ky. 839, 11 S. W. (2d) 973; Ades v. Wash, 199 Ky. 687, 251 S. W. 970; Walker v. Walker, 228 Ky. 357, 15 S. W. (2d) 298. If it is ambiguous, it must be construed so as to give effect to the intention of the parties as expressed by the contract in the light of the circumstances inducing and attending its execution (Caperton v. Clarke, 203 Ky. 191, 261 S. W. 1098; Miller v. New York Life Ins. Co., 179 Ky. 246, 200 S. W. 482; Hawkins & Chamberlain v. Mathews, 242 Ky. 732, 47 S. W. (2d) 547; Webb v. Nelson, 237 Ky. 76, 34 S. W. (2d) 932), and the actual consideration in

every case may be shown by extraneous evidence, even though it may vary the terms of the contract (Piney Oil & Gas Co., 235 Ky. 767, 32 S. W. (2d) 325; Apple v. McCullough, 239 Ky. 74, 38 S. W. (2d) 955).

Parol testimony is competent to establish a parol contemporaneous agreement not inconsistent with the written contract. Ashcraft v. Farmers' Deposit Bank, 225 Ky. 836, 10 S. W. (2d) 276. Also, when the agreement between the parties is one and entire, only a part of it is reduced to writing. Castleman-Blakemore Co. v. Pickrell & Craig Co., 163 Ky. 750, 174 S. W. 749. Recognizing and applying these elementary principles, it is our conclusion that the parol evidence in behalf of Young was properly admitted.

The testimony tending to establish the contract between him and Bullock relative to their signing as sureties the notes of the Wallins Creek Coal Company to afford it credit with the bank, and as to the payment of the $8,000 note by a renewal note, is disputed by Bullock. The evidence in behalf of the respective parties on all issues was not only sufficient to authorize a submission of the case to the jury, but to sustain a verdict for or against either of them. The jury accepted the theory of Young. Its verdict not being flagrantly or palpably against the evidence, we are not authorized to interrupt it.

The jury did not find for Young on his counterclaim set up in his amended reply. Its verdict thereon indicates that Young's counterclaim, except as a defense to the $8,000 and the $1,000 notes, was disregarded by the jury.

It is argued by Bullock that the counterclaim and defense set up in the reply are within the statute of frauds (see Ky. Stats. sec. 470 et seq.) and also the statute of limitation. If the Carrs Fork Coal Company or its asignee was here complaining, there would be merit in the argument.

According to Young's testimony, he had fully performed his part of the contract. Therefore, to permit the statute of frauds to protect Bullock in his failure to carry out the contract with Young to sign with him as surety the notes of the Wallins Creek Coal Company, and at the same time allow him to recover of Young on them, would be permitting him to use the statute of

frauds as a "sword and not a shield," which is never permissible. As to the statute of limitations, the jury having failed to find for Young on his counterclaim, but for him in so far as the facts constituted a defense, the statute of limitation is not available against his defense. Luscher et al. v. Security Trust Co. et al., 178 Ky. 593, 199 S. W. 613, L. R. A. 1918C, 615.

It is also argued by Bullock that it was the duty of the court to construe the contract and to instruct the jury accordingly; that the instructions are erroneous because they submitted to the jury the authority and the right to construe it for itself. He is in no attitude to press this vice, if any, there is in the instructions. Instruction No. 1 offered by him contains this language:

> "If you believe from the evidence that by the terms of the writing, dated June 11th, 1925, the defendant, the plaintiff and said Wood agreed that Young was to have the right to one-half of the combined salaries of the said three men, paid upon his joint obligation for the purchase price of McConnell's and Raybould's stock * * * then the law of the case is for the defendant and you should so find."

Instruction No. 1 as given by the court is substantially the language of No. 1 offered by Bullock in this respect, except the court's instruction submits to the jury the interpretation of the contract without confining it to the written contract. The rule is universally accepted that a party cannot complain of an instruction containing the same vice as one offered by him, for by offering his instruction he thereby invites the error and he may not complain in this court of an error so invited. Moise v. Burton, 197 Ky. 538, 247 S. W. 744; Saunders' Ex'rs. v. Armour & Co. et al., 220 Ky. 719, 295 S. W. 1014; Horneck Bros. v. Strubel, 212 Ky. 631, 279 S. W. 1087; City of Greenville v. Johnston, 244 Ky. 782, 52 S. W. (2d) 716; Pope-Cawood Lumber & Supply Co. v. Cleet, 236 Ky. 866, 33 S. W. (2d) 360; Choate v. Louisville R. Co., 243 Ky. 562, 49 S. W. (2d) 342; Challinor v. Axton, 246 Ky. 76, 54 S. W. (2d) 600; McGraw v. Ayers, 248 Ky. 166, 58 S. W. (2d) 378.

He argues that sections 3720b-29, 3720b-120, Kentucky Statutes, control Youngs' liability on the $8,000 and the $1,000 notes. What we have said relative to the statute of frauds applies to the argument presenting these sections.

654

Also he argues thus:

"There is no contention nor figment of testimony that Bullock did not apply the salaries on the purchase price; in fact Young admits that he paid $14,000.00 out of his pocket. There is no contradiction that this money was to be applied upon Young's indebtedness, there is no contradiction that it was not so applied, it is most difficult to understand why the judgment will be permitted to stand which in effect not only relieves Young of his original obligation of $42,200.00, but also adjudges him the money which he had agreed should be paid on that indebtedness, on stock that is now of small value."

Such argument directly conflicts with both the pleading and the testimony of Bullock. Young's cause of action and his testimony to sustain it were that he was entitled to one-half the combined salaries of Bullock, Wood, and Young. Bullock denied, in his pleading and testimony, Young was entitled to one-half of them, and alleged and testified that he was only entitled to one-fifth. And to justify himself in not paying or accounting to Young even for this one-fifth, he alleged and testified that he was the owner of the $8,000 and the $1,000 notes, which he pleaded as a set-off, and asked for a judgment over, for the difference between the one-fifth of the combined salaries and the notes. He neither alleged nor testified that the $14,000 argued as having been paid out of his pocket was paid either in whole or in part for Young and that he was entitled to set off the same against Young's claim for one-half of the combined salaries. He neither sought nor asked such relief in any pleading. Nor did he ask nor seek a settlement of his and Young's liabilities to each other growing out of their purchase of the McConnell and Raybould stock or the notes executed therefor. Bullock consistently contended in his pleadings and in his testimony that the combined salaries were not invested by him in accordance with a trust agreement, because Young was only entitled to one-fifth of the salaries, and it should be credited on his set-off, based upon his asserted ownership of the notes. The records of the corporation show the stock of the Carrs Fork Coal Company, if paid for by Bullock with the $14,000, was issued to him and Wood, and no stock either in accordance with the trust agreement, or at all, had ever been issued in the name of Young. The plead-

ings of the parties in no way present for settlement as a set-off, or otherwise, the liabilities of Bullock and Young, the one to the other, growing out of the purchase of the McConnell and Raybould stock and their notes therefor. Bullock testified that the McConnell and Raybould notes had been paid by the Kentucky Jewel Coal Company, by Bullock's paying $20,000 and by a suit for that purpose, appropriating $1,000 collateral belonging to Young. The pleadings of the parties leave this subject-matter for amicable settlement or litigation of the parties.

Bullock, in his arguments, insists: "There is another patent error in the judgment. It allows interest to Young on $6,445.00 from December 21st, 1926 to date. If he is entitled to a judgment, he would certainly be entitled to interest only from the date of his election," the date of the filing of the amended petition.

By way of avoidance of Young's right to interest on his recovery of one-half of the combined salaries, Bullock pleaded that a dispute had existed between him and Young "since prior to December 21st, 1926 as to the rights concerning the distribution of the combined salaries." And while the combined salaries had not been paid by him in accordance with the trust agreement, he had paid out of his individual funds about $20,000 on the McConnell and Raybould notes, and "had a demand upon him made on December 21st, 1926," by Young for his one-half of the combined salaries, "he would have been entitled and would have held said stock to secure him in the payment of the sums expended by him on behalf of Young." "That had said demand been made of said date, it would have been a wrongful demand to which under the terms of the aforesaid agreement, the defendant would not have needed to comply." Conceding this statement, it neither constituted a set-off nor an avoidance of the payment of the interest, if Young's theory was supported by the facts, which the jury by its verdict so found. The jury's verdict allowed interest subsequent to the date of Young's 1926 letter to Bullock, demanding ᴶ settlement of the combined salaries, which was refused, followed by this suit for that purpose. The verdict of the jury allowing interest was authorized by the facts.

To consider seriatim all the technicalities urged by

Bullock would unduly prolong this already too long opinion. We do not deem it necessary to dispose of the case to discuss them. Perceiving no prejudicial error, the judgment is affirmed.