John A. RICHEY;  Harned, Bachert & Denton, LLP;  and Norman E. Harned, Appellants

v.

PERRY ARNOLD, INC.;  Honorable Joseph W. Justice, Administrative Law Judge;  and Workers' Compensation Board, Appellees.

No. 2011–SC–000326–WC.

Supreme Court of Kentucky.

March 22, 2012.

Rehearing Denied Oct. 25, 2012.

Norman E. Harned, Harned Backert & McGehee, PSC, Bowling Green, KY, for Appellants, John A. Richey; Harned, Backert & Denton, LLP; and Norman E. Harned.

Douglas Anthony U'Sellis, U'Sellis & Kitchen, PSC, Louisville, KY, for Appellee, Perry Arnold, Inc.

### OPINION OF THE COURT

An Administrative Law Judge determined in this post-award reopening filed by the claimant that a surgery the employer failed to pre-authorize was reasonable and necessary; that the employer must pay for the procedure and related expenses; but that the parties' settlement precluded any claim for temporary total

disability (TTD) benefits relative to the surgery. The ALJ also determined that the employer's failure to pre-authorize or contest the surgery within 30 days did not warrant the imposition of sanctions.

The Workers' Compensation Board reversed to the extent that it interpreted the settlement agreement as not precluding future TTD benefits but affirmed otherwise. Convinced that the agreement precluded additional income benefits, the Court of Appeals reversed with respect to future TTD and reinstated the ALJ's decision.

This appeal by the claimant raises two issues. First, he argues that the terms of the parties' agreement did not bar a future TTD claim. Second, he argues that KRS 342.310(1) and 803 KAR 25:012 § 2(*l*)(a) warranted sanctions based on what he alleges was the employer's unreasonable defense to his motion to compel payment for the surgery after it violated 803 KAR 25:096, § 8(1) by refusing to pre-authorize the surgery and then failing to file a motion to reopen and medical dispute within 30 days.

We affirm insofar as the settlement barred a future TTD award but reverse and remand with respect to the issue of sanctions. The ALJ must reconsider the claimant's request based on a correct understanding of the employer's obligations concerning the pre-authorization request and on any other considerations relevant to the reasonableness of its action in defending the reopening.

The claimant, a carpenter, injured his right shoulder on July 13, 2004, while pulling on a beam that he was attempting to install beneath a floor system. After conservative treatment failed to relieve his symptoms, he saw Dr. Richards, an orthopedic surgeon. Dr. Richards performed arthroscopic surgery and a subacromial decompression in October 2004. He diagnosed subacromial bursitis. The claimant returned to light-duty work in December 2004 although his shoulder symptoms continued. Dr. Richards noted in January 2005 that he could not explain the claimant's ongoing pain complaints and recommended a second opinion because his condition was not improving.

Dr. Goldman performed an independent medical evaluation for the employer in February 2005. He recommended an MR arthrogram to be certain that a labral tear did not occur during physical therapy or that there was not a problem with the biceps anchor. Finding the claimant to be at maximum medical improvement if neither condition was present, Dr. Goldman assigned a 9% impairment rating based on a decreased range of motion in the shoulder.

Dr. Dunn evaluated the claimant in August 2005 at his primary care physician's request. He thought that the claimant did not have a labral tear that was significant mechanically and thought that further surgery would be harmful. He recommended that the claimant follow up with his primary care physician.

The claimant sought pre-authorization for a referral to Drs. Kleinert and Kutz shortly after seeing Dr. Dunn. His employer denied the request in September 2005 based on a utilization review report by Dr. Olash, who opined that the referral was not medically necessary.

Dr. Gladstein evaluated the claimant on the employer's behalf in September 2005, at which time he exhibited a full range of motion in the shoulder but complained of discomfort. Dr. Gladstein found no evidence of atrophy, crepitus, instability, or appreciable muscle weakness. He also noted that no significant radiographic abnormality supported a diagnosis of a significant SLAP lesion. Dr.

Gladstein reviewed the MR arthrogram with a radiologist and noted that the "relatively normal" findings were supported by the arthroscopy performed by Dr. Richards, which also revealed no significant pathology. He concluded that further surgery was not indicated.

The parties agreed to settle the matter on November 2, 2005 although the claimant had not filed a formal application for benefits. As approved by an ALJ on November 9, 2005, their Form 110–I agreement characterized the claimant's injury as a right shoulder rotator cuff tear. It stated that his average weekly wage was $417.23; that the employer paid $14,693.31 in medical expenses through September 16, 2005; that it paid $6,040.04 in TTD expenses through November 2, 2005; and that the percent of disability was 9%. The agreement did not include a calculation of the lump sum provided and made no reference to a multiplier. It concluded with the following statement:

> This is a lump sum settlement of $15,500 for complete resolution of indemnity benefits. Medical benefits remain open per the Act.

The motion and affidavit requesting an attorney's fee, filed by the claimant's then-attorney, stated among other things that the parties agreed to settle the claim and that the claimant retained the right to future medical treatment but waived the right to reopen.

In August 2006 the claimant sought preauthorization for a referral to the Tennessee Orthopedic Alliance. Dr. Kirsch performed a utilization review and recommended denying the request as being not medically necessary. He noted that three orthopedic experts saw no evidence of a significant labral lesion and also that Dr. Richards evaluated the labrum "under direct vision." The employer relied on the recommendation to deny the referral.

Pleadings the employer filed before the ALJ in the present proceeding state that the claims adjuster advised the claimant in at least three separate conversations prior to February 20, 2007 that the evaluation was not approved for compensation. The employer did not, however, file a motion to reopen or medical dispute.

The claimant saw Dr. Anderson at the Tennessee Orthopedic alliance on February 20, 2007, at his own expense. Dr. Anderson examined him and interpreted the 2005 MR arthrogram as revealing a tear of the anterior glenohumeral ligament and a SLAP tear. He recommended arthroscopic surgery to evaluate and repair an anterior laxity and SLAP tear if necessary.

The employer did not dispute that it received a message the claimant sent by fax on February 27, 2007 to the claims adjuster's attention along with a copy of Dr. Anderson's February 20, 2007 office note. The claimant stated in the fax that he sought reimbursement for various expenses incurred in the visit to Dr. Anderson. He also requested compensation for the proposed surgery, time off work related to the surgery, travel expenses, and physical therapy if recommended. The employer did not respond to the request.

Having received no response from the employer, the claimant underwent the surgery on April 3, 2007. Dr. Anderson performed an arthroscopic repair of the anterior and posterior glenoid labrum and a subacromial decompression. He opined in December 2007 that the claimant's work-related injury caused a tear in the glenoid labrum; assigned a 4% impairment rating; and limited the claimant to lifting 40 pounds presently but stated that he should able to work without restrictions within three months.

On April 4, 2007 the claimant filed a motion to reopen, motion for enforcement, motion for sanctions, and medical fee dispute. He sought to recover his medical and travel expenses with respect to the surgery; TTD benefits; and the expenses incurred with respect to the motions.

The employer objected on two grounds: 1.) that it had no duty to submit the claimant's request for pre-authorization to utilization review because it was not made by a physician; and 2.) that it had no obligation to file a motion to reopen or medical dispute because a pre-authorization request does not constitute a "statement for services" that 803 KAR 25:096, § 8(1) requires an employer to pay or contest within 30 days of receipt. The employer also filed a medical fee dispute on April 26, 2007 in order to contest payment for the surgery.

The claimant testified at the hearing that Dr. Anderson released him to return to work on November 19, 2007. He stated that he felt better than he had previously and considered the surgery to be successful. He had returned to work with a different employer.

The ALJ determined that the surgery, physical therapy, and related travel expenses were compensable because they were reasonable and necessary treatment for the effects of the work-related injury. Rejecting the claimant's request for TTD benefits, the ALJ interpreted the terms of the settlement agreement as barring any future income benefits. The ALJ noted that the agreement would have little effect if the term "indemnity benefits" were not interpreted as referring to income benefits.

The ALJ also rejected the claimant's request for sanctions, convinced that 803 KAR 25:096, § 8(1) did not require the employer to approve and pay for the surgery or to file a motion to reopen and medical dispute within 30 days after receiving the claimant's fax and Dr. Anderson's office note. The ALJ opined that such a requirement would place an employer in the untenable position of having to respond to every request that a plaintiff made when accompanied with a "to whom it may concern" note by a physician. Although a later order granted the claimant's petition for reconsideration to the extent of awarding him sanctions in the form of attorney's fees and costs, the ALJ reconsidered the order at the employer's request and ultimately denied sanctions. The claimant appealed.

## I. TTD.

An agreement to settle a workers' compensation claim is a contract between the parties.[1] Questions concerning the construction and interpretation of contractual terms are legal in nature as are questions regarding the existence of an ambiguity.[2] An ambiguous contract is one that is capable of multiple, reasonable interpretations.[3] The primary rule for construing an ambiguous or inconsistent contract is to discern the parties' intent from the entire document; reconcile inconsistent terms where possible; and effectuate the parties' intent.[4] The court may also

---

**1.** *Whittaker v. Pollard,* 25 S.W.3d 466, 469 (Ky.2000).

**2.** *3D Enterprises Contracting Corp. v. Louisville and Jefferson County Metropolitan Sewer District,* 174 S.W.3d 440 (Ky.2005); *Bullock v. Young,* 252 Ky. 640, 67 S.W.2d 941 (1933).

**3.** *Central Bank & Trust Co. v. Kincaid,* 617 S.W.2d 32, 33 (Ky.1981).

**4.** *Black Star Coal Corp. v. Napier,* 303 Ky. 778, 199 S.W.2d 449 (1947); *Bullock v. Young,* 252 Ky. 640, 67 S.W.2d 941 (1933); *Cinelli v. Ward,* 997 S.W.2d 474, 476 (Ky.App. 1998).

consider relevant extrinsic evidence when construing an ambiguous contract, such as the situation of the parties, the purpose of the agreement, and the circumstances under which it was executed.[5]

The Board reversed with respect to the waiver of future income benefits, interpreting the parties' agreement as settling any past claim for TTD but not any future claim. The Board noted that the sentence containing the statement "for a complete resolution of indemnity benefits" is written in the present tense and may be interpreted as referring only to the claimant's present entitlement to income benefits. Noting also that the agreement contains no explicit waiver of the right to reopen and no explicit consideration for such a waiver, the Board relied on *Huff Contracting v. Sark*[6] for the principle that consideration given for a waiver of the right to reopen must be contained on the face of the agreement and may not be simply implied from some other activity.

The Court of Appeals reversed the Board and reinstated the ALJ's decision, convinced that the Board misinterpreted *Huff v. Sark* and misconstrued the parties' contract. The court concluded that, unlike the settlement in *Huff v. Sark*, the settlement at issue presently provided adequate consideration for a waiver of the right to reopen. We agree.

*Huff Contracting v. Sark* concerned an agreement, drafted by the employer's counsel, in which the worker received "[a] lump sum settlement of 3%, discounted at 6%, Total to be paid by the employer is $2,685.20." The agreement noted the amounts of TTD and medical benefits that the employer had paid and indicated that the settlement was "inclusive of all attor-ney fees and also includes all future medical expenses beyond that already paid...." Sometime thereafter, the worker moved to set aside the agreement or, in the alternative, to reopen based on mistake or constructive fraud, stating that it had not been his intent to waive his right to future medical expenses. The court stated that consideration for a waiver of the right to reopen "must be direct on the [face] of the agreement and may not simply be implied from some other activity"[7] and held ultimately that the purported waiver was invalid because neither the letter proposing a settlement nor the settlement, itself, contained substantial evidence that any consideration supported the waiver. The consideration provided was nothing more than the amount to which the worker was entitled by virtue of the agreed-upon impairment rating.

■■ *Huff v. Sark* stands for the principle that an agreement to waive the right to future benefits is invalid unless it demonstrates that the waiver is supported by consideration in addition to that provided for past and present benefits. In other words, the agreement must show that the employer provided consideration for the waiver. When an agreement includes a waiver of future benefits but fails to state explicitly what consideration supports the waiver and also fails to include the calculation from which a lump sum is derived, the ALJ must determine from the agreement as a whole whether the lump sum is adequate to include consideration not only for any agreed-upon benefits but also for the waiver.

■ Having reviewed the agreement at issue presently, we conclude that the parties used the phrase "complete resolution

**5.** *Frear v. P.T.A. Industries, Inc.,* 103 S.W.3d 99, 107 (Ky.2003).

**6.** 12 S.W.3d 704, 706 (Ky.App.2000).

**7.** *Id.* at 706.

of indemnity benefits" to indicate that they intended the lump sum to compensate the claimant not only for his present claim but also for any future claim to income benefits. We reach that conclusion because the agreement also stated explicitly that the claimant reserved his right to future medical benefits but did not provide a reservation of his right to reopen. Moreover, the contents of the motion in which the claimant's attorney requested a fee resolves any doubt concerning what the parties intended when using the present tense in the statement concerning indemnity benefits.

■ The agreement failed to specify what consideration supported the waiver and failed to provide the calculation used to arrive at a $15,500.00 lump sum. Thus, the issue becomes whether the agreement provided consideration that was adequate for the permanent income benefits to which the parties agreed as well as for a waiver of the right to reopen. We conclude that it did.

KRS 342.730(1)(b) entitled the claimant to receive weekly benefits for 425 weeks in an amount equal to 66 2/3% of his average weekly wage, multiplied by the agreed-upon 9% permanent impairment rating, and multiplied again by the statutory factor of 0.85. The agreement contains nothing to indicate that the parties agreed to any additional benefit multipliers. The resulting award would have been approximately $9,047.00, which reduced to a lump sum of approximately $7,756.00 in 2005. Thus, the terms of the agreement supported a reasonable inference that the lump sum provided consideration not only for the agreed-upon permanent partial disability but also for a waiver of the right to reopen in order to obtain additional TTD or permanent income benefits in the future. Moreover, nothing in the agreement indicated that the lump-sum amount in excess of that provided for permanent income benefits related to something other than the waiver.

## II. DENIAL OF SANCTIONS.

KRS 342.310(1) permits an ALJ to assess the whole cost of a workers' compensation proceeding upon a party who brings, prosecutes, or defends the proceeding without reasonable ground. 803 KAR 25:012 § 2(*l*)(a) requires a sanction to be assessed if an employer or its payment obligor challenges a medical bill without a reasonable medical or factual foundation.

The Board affirmed the ALJ's decision to deny sanctions, convinced that 803 KAR 25:12, § 2(1) did not apply to the present facts and that the conflicting medical evidence permitted the ALJ to conclude reasonably under KRS 342.310(1) that the employer did not challenge the treatment proposed by Dr. Anderson or defend the reopening without reasonable grounds. The Board then proceeded, however, to agree with the claimant's assertion that an employer who refuses to pre-authorize a recommended post-award medical procedure but fails to file a medical dispute and motion to reopen is liable for all associated medical charges if the worker undergoes the procedure. The Board also agreed that the claimant's fax and accompanying note from Dr. Anderson were sufficient under the applicable statute and regulations to trigger the employer's obligation to approve the procedure; deny authorization and file a medical dispute within 30 days; or promptly submit the request to utilization review. Moreover, the Board considered the fact that an employer might have to respond to a personal request from an injured worker to be irrelevant if the request was accompanied by appropriate documentation from a medical provider. The Court of Appeals affirmed.

Neither the Board nor the Court of Appeals addressed the claimant's argument

squarely. He argued that the employer acted unreasonably by defending against his motion to reopen because, by failing to pre-authorize the surgery but failing to file a timely medical dispute and reopening, the employer waived any defense to payment. Thus, 803 KAR 25:096, § 8(1) required it to pay for the surgery without regard to the medical evidence.

The claimant concedes that the conflict in the medical evidence was relevant to the employer's refusal to pre-authorize the surgery. He argues, however, that the Board and the Court of Appeals erred because they failed to recognize that the conflict in the medical evidence was irrelevant to the reasonableness of the employer's actions in defending against his motion to reopen, which sought an order that required the employer to comply with 803 KAR 25:096, § 8(1) by paying for the surgery and related medical expenses. We agree.

■ An approved settlement agreement is equivalent to an award and is enforceable as a final judgment.[8] KRS 342.020(1) places on an employer who wishes to dispute a post-award medical bill the burden to file a medical dispute and motion to reopen within 30 days and to prove that the expense is unreasonable or unnecessary.[9] An employer that fails to do so waives its right to contest the bill.[10]

*Kentucky Associated General Contractors Self-Insurance Fund v. Lowther*[11] concerned a dispute over the propriety of a fine based on unfair claims settlement practices by an employer's insurance carrier. Central to the dispute was whether the injured worker or the employer bore the burden of filing a post-award medical dispute and motion to reopen when the employer denied a requested treatment following utilization review. The court acknowledged that neither KRS 342.020 nor the applicable regulations states explicitly that a decision to deny pre-authorization constitutes a "statement for services," which 803 KAR 25:096, § 8(1) requires the employer to pay or contest within 30 days. We noted with approval, however, that the Board had interpreted the regulations since 2001 as equating a final utilization review decision to deny pre-authorization with a "statement for services."[12] The same rule clearly applies when an employer refuses to pre-authorize a medical procedure without submitting it to utilization review because the effect of the utilization review process under 803 KAR 25:096, § 8(2)(d) is simply to toll the 30–day period.

The fine at issue in *Kentucky Associated General Contractors Self-Insurance Fund v. Lowther* was imposed under KRS 342.267 based on the employer's failure to meet the time constraints for paying the claim and its failure to pay a claim in which liability was clear. The statute permits the Commissioner of the Department of Workers' Claims to fine an insurance carrier for unfair claims settlement practices. It provides no remedy to the injured worker who incurred the expense of a reopening in order to obtain an order that compels the recalcitrant employer to comply with its legal obligation to pay for

8. KRS 342.305.

9. *Mitee Enterprises v. Yates*, 865 S.W.2d 654 (Ky.1993); *Addington Resources, Inc. v. Perkins*, 947 S.W.2d 421 (Ky.App.1997).

10. *Phillip Morris, Inc. v. Poynter*, 786 S.W.2d 124 (Ky.App.1990).

11. 330 S.W.3d 456, 460 (Ky.2010).

12. *See Garrett Mining # 2 v. Rondal Miller*, Claim No. 97–78726 (August 29, 2001).

the treatment. KRS 342.310(1) provides a remedy.

 The Board, since at least 2001, has viewed an employer who waives its right to contest a medical expense but defends against the injured worker's motion to reopen as having done so without reasonable ground. Then–Chairman Lovan stated on behalf of a unanimous Board as follows:

> When, as here, the employer never files a medical dispute, never files a motion to reopen, continues to refuse to pay medical expenses, even if based upon utilization review, and requires the employee to seek litigation of those benefits either through the workers' compensation administrative process or through KRS 342.305, we believe an ALJ becomes virtually obligated to assess sanctions pursuant to KRS 342.310. In order for KRS 342.310 to be used by an ALJ, it matters not whether a party asks for sanctions.[13]

We agree but also acknowledge that KRS 342.310(1) is discretionary.

The ALJ denied sanctions in the present case based on a conclusion that the employer had no obligation to file a medical dispute and motion to reopen. *Kentucky Associated General Contractors Self–Insurance Fund v. Lowther*, which determined that an employer did have such an obligation, was rendered while the present case was pending before the Court of Appeals. The claimant raised the same argument concerning an employer's obligation from the outset and preserved it on appeal.[14] We conclude, therefore, that the case must be remanded to the ALJ to reconsider the question of sanctions based on a correct understanding of the employer's obligations and on any other considerations relevant to the reasonableness of its

action under KRS 342.310(1) and 803 KAR 25:012, § 2(1)(a).

The decision of the Court of Appeals is hereby affirmed in part and reversed in part, and this claim is remanded to the ALJ to reconsider the issue of sanctions.

All sitting. All concur.

---

13. *Garrett Mining #2 v. Rondal Miller*, 97–78726 at 8.

14. *See Hilen v. Hays*, 673 S.W.2d 713, 720 (Ky.1984).