# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: DECEMBER 15, 2022
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0016-WC

ELLIS POPCORN CO. C/O                                                          APPELLANT
MATRIX COMPANIES, TPA


ON APPEAL FROM COURT OF APPEALS
NO. 2021-CA-1043
WORKERS' COMPENSATION BOARD
NO. WC-91-04106

V.


ROBERT STOGNER; DR. ROBERT                                                     APPELLEES
HAYDEN; DR. STEPHEN COMPTON; DR.
JOHN RUXER/ORTHOPAEDIC INSTITUTE
OF WESTERN KENTUCKY;
HONORABLE JOHN MCCRACKEN,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD


**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

This appeal comes to us from Ellis Popcorn Company's medical fee dispute challenging the Appellee, Robert Stogner's, treatment to injuries of the left knee, left hip, left ankle, and right shoulder. The Administrative Law Judge found these ailments to be a direct and natural consequence of a head trauma injury Stogner sustained on December 26, 1990, when he fell off a ladder. This finding was predicated on Stogner's testimony and a 2017 medical report filed in a prior medical fee dispute related to Stogner's 1990 injury. Ellis argues medical reports prior to June 2020 cannot be used by the ALJ to find

causation nor can Stogner's own testimony. Instead, Ellis argues, Stogner needed to supply a medical opinion attributing his June 16, 2020, fall to his 1990 injury. On appeal, the Board affirmed the ALJ. The Court of Appeals subsequently affirmed the Board. Upon review, we affirm the Court of Appeals.

## I.    Facts

Per the ALJ's finding of facts, Stogner suffered a head injury on December 26, 1990, when he slipped and fell from a ladder, falling headfirst into a concrete floor, "and sustained a closed head injury with significant loss of function, including vision and hearing problems, as well as injuries to his low back." Stogner related that since 1990 he has fallen hundreds of times and he is a high risk for falls.

As a result of his 1990 injury, Stogner was diagnosed with ataxia (the loss of muscle coordination), experienced seizures, and had to wear a brace on his left leg as well as walk with a cane. In 2017, because of two falls, he was diagnosed with a disc protrusion. He saw Dr. Zerga for an examination. Dr. Zerga concluded the disc protrusion was linked to the 1990 injury, and commented further on Mr. Stogner's medical history, noting

> several issues in this gentleman. He had . . . significant brain trauma . . . He now has a mechanical movable brace [on his left leg] and has spasticity in both limbs . . . 400 to 500 falls. He blames it on his brace. He says sometimes his brace will malfunction and it will cause him to fall. He also has seizures. By his wife's description they are complex partial seizures sometimes with secondary generalization.

Dr. Zerga further opined that "his neurological deficits have caused frequent falls." This report, along with statements by Stogner, formed the foundation for

2

the ALJ's ruling below. Stogner testified that he fell on June 16, 2020, as a result of his knee brace malfunctioning, i.e., it apparently locks in place sometimes and prevents Stogner from either bending or extending his leg correctly to maintain balance.

To the contrary, Ellis elicited the opinion of Dr. Avrom Gart. He performed a medical records peer review on August 5, 2020, but did not personally evaluate Stogner. Dr. Gart concluded the 1990 injury did not cause the left knee, left hip, left ankle, and right shoulder complaints but instead were the result of a fall on June 16, 2020, which was caused by Stogner's development of knee osteoarthritis. The ALJ found Dr. Gart unpersuasive and his failure to evaluate Stogner in person as a reason to reject his opinion. The Board noted further,

> Dr. Gart failed to consider that Ellis has had to pay for several injuries caused by falls. The medical history proves he is a high fall risk because injuries sustained in the fall at work compromised the functioning of his left leg/knee. The original injury caused nerve damage in the left leg and knee and impaired balance due to ataxia related to the brain injury.
>
> …
>
> It is not clear from Dr. Gart's report that he had an accurate history regarding the number of falls caused by conditions related to the original work injury. Dr. Gart only lists Dr. Compton's medical records from June 17, 2020 as records he reviewed. He indicated he had a peer discussion with Dr. Compton. Dr. Gart did not discuss the cause of the osteoarthritis, other than stating the 1990 incident was not the cause. He did not discuss whether hundreds of falls caused by the effects of the work-related injury would have caused or contributed to the osteoarthritis. He did not address how the buckling of the knee in 2020 would have a different cause than the buckling of the knee in 2017 that was determined to be the result of the 1990 injury.

The Board determined the ALJ was within his authority to reject Dr. Gart's opinion and accept Dr. Zerga's. It further determined that consideration of Dr. Zerga's medical opinion was within the ALJ's authority even though Stogner had never designated it as evidence.

Before the Court of Appeals, Ellis abandoned the argument that Dr. Zerga's report was improperly considered as evidence due to a lack of designation. Consequently, that argument is not before this Court either and we presume Dr. Zerga's report was properly considered as an evidentiary matter. Instead, Ellis argues Dr. Zerga's report does not constitute substantial evidence because it was rendered in 2017. In other words, "the ALJ erred by relying on the 2017 IME report of Dr. Zerga to conclude that a fall that occurred in 2020 was causally related to the neurologic effects of the plaintiff's underlying work injury." Ellis also argues that a 2017 report cannot constitute substantial evidence for a 2020 fall because Dr. Zerga obviously would have not had an adequate medical history of Stogner between the 2017 evaluation and the 2020 fall, thus should be disallowed under *Cepero v. Fabricated Metals Corp.*, 132 S.W.3d 839 (Ky. 2004). Finally, Ellis argues that *Kingery v. Sumitomo Electric*, 481 S.W.3d 492 (Ky. 2015) controls because it held ALJ's are not free to ignore uncontradicted medical testimony regarding causation except in limited circumstances not present in Stogner's case.

## II. Standard of Review

> The ALJ, as the finder of fact, and not the reviewing court, has the sole authority to determine the quality, character, and substance of the evidence. *Paramount Foods, Inc. v. Burkhardt,* Ky., 695 S.W.2d 418 (1985). Where, as here, the medical evidence is

4

> conflicting, the question of which evidence to believe is the exclusive province of the ALJ. *Pruitt v. Bugg Brothers,* Ky., 547 S.W.2d 123 (1977).

*Square D Co. v. Tipton*, 862 S.W.2d 308, 309 (Ky. 1993). But "ALJs are not permitted to rely on lay testimony, personal experience, and inference to make findings that directly conflict with the medical evidence, except in limited situations, such as matters involving observable causation." *Kingery v. Sumitomo Electric Wiring*, 481 S.W.3d 492, 496 (Ky. 2015). On appeal, this Court addresses itself to "new or novel questions of statutory construction, or to reconsider precedent when such appears necessary, or to review a question of constitutional magnitude." *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 688 (Ky. 1992). We do not engage in reassessment of facts, inferences therefrom, or the reweighing of evidence. *Id.* at 687. In medical fee disputes, the employer bears the burden of showing the contested medical treatment is unreasonable or unnecessary. *Richey v. Perry Arnold Inc.*, 391 S.W.3d 705, 712 (Ky. 2012).

### III.    Analysis

Ellis' arguments are unavailing as neither of the cases it cites for compelling reversal in fact demand such an outcome here. In *Kingery*, the claimant suffered a mild strain to her shoulder and neck after one month of work. 481 S.W.3d at 494. Twenty-one years later, Sumitomo challenged continued payments for several prescription painkillers. Kingery submitted "no medical evidence to rebut Dr. Randolph's opinions" that the prescriptions were not related to her prior work injury. *Id.* at 495. Moreover, Kingery's argument

5

that she was unable to work due to the injury was contrary to the ALJ's original opinion and order that found "the work-related injury did not prevent her from returning to her employment with Sumitomo (or any other employment for that matter)." *Id.* at 496. Because Kingery never reopened her original case as a result of her allegedly worsening condition, she was bound by the original findings. *Id.* at 497-98. In contradistinction, Stogner was found to have suffered a traumatic brain injury by the ALJ in 1993. He was adjudged 100% occupationally disabled and "cannot perform meaningful employment." The medical evidence recorded by the original ALJ noted he suffered from "ataxia and unsteady gait such that he cannot walk without a cane." He was also prescribed "Dilantin for seizures[.]" Thus, Dr. Zerga's report in 2017 is consistent with the original findings of the ALJ in Stogner's case.

Additionally, even if *Kingery* were controlling in this case, its central ruling would not compel reversal. *Kingery* holds that uncontradicted medical testimony is controlling upon an ALJ except in cases of "observable causation." *Id.* at 496. Here, Stogner testified that his fall on June 16th occurred, as the ALJ recounted, "due to his left knee failing to 'lock' on the forward motion of his left leg and buckling, causing him to fall hard on his left side." In other words, the mechanical failure of Stogner's knee brace was the proximate cause of the fall, not a neurological issue such as a seizure. As such, there was a readily observable causation present in Stogner's June 16th fall and Stogner's own testimony is competent proof for an ALJ to attribute the fall to mechanical failure of a knee brace.

6

*Cepero* also does not compel reversal. That case stands for the rule that "where it is irrefutable that a physician's history regarding work-related causation is corrupt due to it being substantially inaccurate or largely incomplete, any opinion generated by that physician on the issue of causation cannot constitute substantial evidence." 132 S.W.3d at 842. But we also included an oft-overlooked caveat that "Medical opinion predicated upon such erroneous or deficient information that is *completely unsupported by any other credible evidence* can never, in our view, be reasonably probable." *Id.* (Emphasis added). As just noted, Dr. Zerga's 2017 report is entirely consistent with the original opinion and order from 1993, despite Dr. Zerga explicitly stating he did not have access to prior records regarding the 1990 injury specifically. Therefore, there is no basis to hold he "irrefutably" had an inadequate medical history in 2017. Moreover, the 1993 original opinion and order is credible evidence supporting Dr. Zerga's report.

Ellis has not cited to any statute or case law that prohibits an ALJ in a medical fee dispute from considering the medical testimony from the original case or prior medical fee disputes, or the findings of previous ALJ's where available. Indeed, we would expect such records to be utilized. The ALJ below used Dr. Zerga's report "as a reasonable explanation for the falls which is consistent with Plaintiff's current statements." And although Dr. Zerga did believe seizures had caused Stogner to fall in the past, he also recounted Stogner's attribution of hundreds of falls to his knee brace, which is exactly what Stogner states caused the June 16th fall. Ellis reads too much into the

7

ALJ's orders when it states the ALJ used Dr. Zerga's report to attribute causation to "neurologic effects[.]" No such finding was ever made by the ALJ in this particular medical fee dispute.

To put it plainly, Stogner would not wear a knee brace but for the 1990 fall, and but for the mechanical failure of the knee brace he would not have fallen on June 16, 2020. Therefore, the latter is a direct and natural consequence of the former. This finding is supported by substantial evidence, and we cannot say Ellis' evidence compels a contrary finding. *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986). Ellis' only evidence that the fall was not a direct and natural consequence of the 1990 injury was Dr. Gart's opinion stemming from a peer review of one other doctor's medical reports. But as the Board accurately pointed out, Dr. Gart's attribution of the fall to osteoarthritis in the knee wholly neglects to consider that the osteoarthritis itself may be at least partially related to Stogner's 1990 injury—a conclusion so obvious that the Board believed Dr. Gart was the one who seemingly had an inadequate medical history, not Dr. Zerga. In any event, Dr. Gart's report by itself simply does not compel a conclusion that the June 16th fall was not a direct and natural consequence of Stogner's 1990 injury. And since the ALJ's ruling does not otherwise conflict with *Kingery* or *Cepero*, we affirm.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Matthew J. Zanetti
Ferreri Partners, PLLC

COUNSEL FOR APPELLEE, Robert Stogner:

Jeffrey A. Roberts

ADMINISTRATIVE LAW JUDGE:

John McCracken

WORKERS' COMPENSATION BOARD:

Michael Wayne Alvey,
Chairman

APPELLEE:

DR. JOHN RUXER/ORTHOPAEDIC INSTITUTE OF WESTERN KENTUCKY

APPELLEE:

DR. ROBERT HAYDEN

APPELLEE:

DR. STEPHEN COMPTON